Statement of Facts.

MAY SUMMERS v. BERGNER BREWING CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF PHILADELPHIA COUNTY.

Argued January 9, 1891—Decided October 5, 1891.

(a) A little girl was run down by a beer wagon and injured. When first
observed she was between the legs of one of the horses. There was
testimony tending to show that the driver was asleep when the accident
occurred, and that the team was running on a street-railway track at a
rapid gait and on a descending grade:

1. The child being but four years of age was not to be held responsible
for contributory negligence; and it could not be assumed that she was
a trespasser, or that her actions were negligent and rash, merely be-
cause the evidence failed to explain how she became involved in the
peril in which she was discovered.

2. In the absence of testimony, the reasonable inference would be that
she was run over while crossing or playing in the street; and, under
the evidence tending to show affirmatively the negligent conduct of the
driver in the management of his team, it was for the jury to find whether
the injuries were caused by the defendant's negligence.

3. The record of a prosecution of the driver for assault and battery, in
the Quarter Sessions, instituted by the father and next friend of the
child, offered to show that at the trial thereof there was no contention
that the driver was asleep when the accident occurred, was irrelevant
to the issue and properly excluded.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 414 January Term 1890, Sup. Ct.; court below, No. 768
December Term 1885, C. P.

On March 1, 1886, May Summers, by her father and next
friend, M. P. Summers, brought case against the Bergner & En-
gel Brewing Company. Issue.

At the trial on February 26, 1890, Dr. A. W. Griffith, a
practising physician, testified for the plaintiff that on July 28,
1885, he was walking up Tenth street below Washington Ave-
nue, and, hearing a child scream, turned and saw the child be-
tween the fore legs of one of the horses drawing a beer wagon.
The team was following the street-railway track on a descend-

Statement of Facts.

ing grade, and was moving at a fast trot. The driver was sitting with his hands in his lap and his head down, the witness being of the opinion he was asleep, " and in no condition to drive in a dangerous place." The witness shouted to the driver, and rushed to get the child, which was being turned about by the fore legs of the horse. As the driver checked up the horses, the witness reached for the child, when the latter received a blow from the horse's hind foot and was thrown before the front wheel of the wagon. The wheel, running along the railway track, struck the child's head just under the ear, and would have crushed it had not the witness snatched it away.

It was shown, further, that the driver's name was John Dillenz, and that he was driving the team in the employment of the defendant company; that the child was the plaintiff, and when taken home was found to be bruised at the hip, in the stomach, and to be bleeding from the left ear; that she was confined to bed for about two weeks, was then taken to Atlantic City, and on her return after an absence of some weeks, went about as usual, but seemed to be nervous; that in about eighteen months after the injury, it was found that the sight of the child's right eye was defective, and in February, 1889, she was put under the care of an oculist. The oculist, Dr. Randall, testified that there was atrophy of the optic nerve of the right eye, and that the sight was substantially lost. Upon statements made to him by the parents of the child as to the facts of the injury, and in response to a hypothetical question including as a fact the statement of a fracture of the skull, the oculist expressed his opinion that the injuries received in the accident would account for the defective condition of the eye. Other expert witnesses, as well as Dr. Randall, testified to the opinion that the defective eyesight was not congenital. There was no testimony tending to show that there was a fracture of the child's skull.

The driver of the wagon testified for the defendant that he was going down Tenth street slowly and was not asleep; that he saw the child with other children playing on the right-hand side of the street, and they ran across to the left-hand side, when he pulled up and hallooed to them; that the plaintiff started to run, and in an effort to pick up something she had

Charge of Court below.

dropped, or stopping for some other purpose, she got under the feet of the horse and was thus injured.

The defendant's counsel offered in evidence the exemplification of the record from the Court of Quarter Sessions, in the case of Commonwealth v. John Dillenz, "to show that at that time there was no contention on the part of Mr. Summers that this driver was asleep, and that he prosecuted him for assault and battery on this child." Objected to.

By the court: Offer refused; exception.[1]

At the close of the testimony, the court, PENNYPACKER, J., after briefly reviewing the facts, charged the jury in part as follows:

[If you find that there was negligence in the way the driver was conducting the wagon at this time, and that this negligence resulted in the injuries which the child suffered, your verdict should be for the plaintiff.] [2]

In behalf of the defendant, the driver himself, Mr. Dillenz, is produced. There was some confusion about the account which was given by the driver, and it may be that it was more or less affected by his imperfect knowledge of the language. What he said, substantially as I understand it, was, that he was going down Tenth street slowly; that he was not asleep; that he saw the child with other children playing upon the right-hand side of the street; that they ran across on to the left-hand side; that he pulled up and he hallooed to them; that he pulled up his horses and came to a stop; that this little girl started to run to the other side of the street, and in an effort to pick up something that she had dropped, or for some other purpose, got under the feet of the horse and was injured. If there was no negligence on the part of the driver, or if there was negligence, and these injuries were caused solely and only because of the fact that the child herself ran under the horse's feet, the verdict should be for the defendant.

If you should find in favor of the plaintiff, you will then approach the question of the measure of damages. . . . .

It is also alleged here that there was a permanent injury to the child. If there was such a permanent injury resulting from the accident which occurred through the negligence of the defendant, she is entitled to recover for the loss of earning

Charge of Court below.

power resulting from that injury. The permanent injury which is alleged is the loss of the sight of her right eye. There was some reference in the testimony to injuries in her stomach, but I do not understand that they were pressed very strongly, or that the evidence is very clear, but that is a question for you. It is asserted that because of these injuries the child has lost the use of her right eye.

Dr. Randall, an expert oculist, who made two examinations of the child, has testified that there is atrophy of the optic nerve of the right eye, and that the sight is substantially lost. In response to the hypothetical question which was put to him, his answer substantially was, that the injuries received in this accident could account for this loss of sight. It is my duty to call your attention to the fact that when this hypothetical question was put, there was included in it, as a fact presented to him, the statement of a fracture of the skull, and, based upon the facts presented, he gave that testimony. I recall nothing in the evidence to show that the child's skull was fractured. Dr. Schweinitz says that the injuries were the most likely cause of the loss of sight, and Dr. Jackson, a witness produced by the defendant, who had not examined the child, but who had heard the testimony as to her injuries and the condition as given by Dr. Randall, says that the loss of sight may have been caused by a disease, from over-use of the eye, from studying in an improper light, or, it might have been congenital or from some fault; it might arise suddenly, or from a local injury; and he went on to testify that in the latter event it would not be likely to develop for several months. I understood Dr. Randall to say that this injury to the eye might develop slowly, after the expiration of some months, and that as to whether it would develop after years, was an uncertain question.

[Now, you have heard this testimony, and the testimony of the parents of the child, as to when they first noticed this apparent injury to the eye, and my recollection is, that they fixed it at about a year, or a year and a half. If this permanent injury was the result of the accident, and you find in favor of plaintiff on the question of negligence, it would be your duty to ascertain what was the loss of earning power to the child, because of the injury. It is not, as has been sug-

Charge of Court below.

gested to you by counsel for the plaintiff, what you would be willing to sell your eyes for, or one of your eyes for. That is a bargain which no man in his senses would be willing to make. But it is your duty to carefully and thoughtfully estimate what would be the loss of the earning power because of this injury, and to give a verdict for that, and for that alone, in addition to compensation for the pain and suffering to which I have called your attention.] [3]

I am asked on the part of the defendant to charge you upon these points:

1. The foundation of plaintiff's case is the negligence and improper conduct of defendant's driver. Therefore, unless the evidence shows that the driver did something he ought not to have done, or omitted something he ought to have done, and this act or omission caused the accident, your verdict should be for the defendant.

Answer: I affirm that point.

2. The mere fact that the accident happened is no evidence of negligence on the part of defendant. The plaintiff must prove the particular act of commission or omission on the part of this driver, which caused the accident, and if this has not been done, the verdict should be for defendant.

Answer: I affirm that point.

3. No person, in driving through the street, is bound to anticipate that a person, either child or adult, may suddenly run in front of or under his horses, and get injured; and if any injury does happen under such circumstances, the driver would not be negligent, and there could be no recovery against him, or his employer.

Answer: I decline that point.[4]

4. If this child ran suddenly right in front of the horses of the defendant, either to pick up something she had dropped, or for any other childish reason, and that act of hers was the real and sole cause of the accident, the plaintiff cannot recover, and the verdict should be for defendant.

Answer: I affirm that point. Ordinarily, if there is negligence on the part of both plaintiff and defendant, which unite in causing the accident, the plaintiff cannot recover, because if there be any contributory negligence, it deprives him of that right. In this case, the child being about four years of age, there can be no contributory negligence.

Arguments.

5. There being no evidence in the case that the accident was the direct result of any negligence on the part of the defendant's driver, therefore, under all the evidence the verdict must be for defendant.

Answer: I decline that point.[5]

—The jury returned a verdict for the plaintiff for $7,500. Upon the plaintiff filing a remittitur for all the verdict over $5,000, a rule for a new trial was discharged and judgment entered on March 26, 1890, for the sum last mentioned; whereupon the defendant took this appeal, assigning for error:

1. The refusal of the defendant's offer.[1]

2, 3. The portions of the charge embraced in [ ][2][3]

4, 5. The refusal of the defendant's points.[4][5]

*Mr. John Dolman* (with him *Mr. James P. Dolman*), for the appellant.

That the evidence that the injury was caused by the driver's negligence was insufficient for submission, counsel cited: Hoag v. Railroad Co., 85 Pa. 293; Fairbanks v. Kerr, 70 Pa. 86; Cover v. Manaway, 115 Pa. 338; Hyatt v. Johnston, 91 Pa. 196; Raby v. Cell, 85 Pa. 80; Ogden v. Railroad Co., 23 W. N. 191; Howard Express Co. v. Wile, 64 Pa. 201; Hart v. Allen, 2 W. 114; Souter v. Baymore, 7 Pa. 415; Goshorn v. Smith, 92 Pa. 435; Penna. R. Co. v. Morgan, 82 Pa. 134; Phila. etc. R. Co. v. Spearen, 47 Pa. 300; McCully v. Clarke, 40 Pa. 399; Delaware Tow-Boat Co. v. Starrs, 69 Pa. 36; especially in view of the fact that the child was wandering upon the public street: Thirteenth St. Ry. Co. v. Boudrou, 92 Pa. 475; Creed v. Railroad Co., 86 Pa. 139; Lackawanna R. Co. v. Chenewith, 52 Pa. 382; Delaware Tow-Boat Co. v. Starrs, 69 Pa. 36; Hice v. Kugler, 6 Wh. 336; Gould v. McKenna, 86 Pa. 297; Phil. etc. R. Co. v. Spearen, 47 Pa. 300; Hestonville Ry. Co. v. Connell, 88 Pa. 520; Oil City Bridge Co. v. Jackson, 114 Pa. 321; Phil. etc. R. Co. v. Hummell, 44 Pa. 375. That an opinion, based upon an admittedly erroneous assumption, should have been excluded: Reber v. Herring, 115 Pa. 599; and the cause should have been withdrawn from the jury: Delaware Canal Co. v. Barnes, 31 Pa. 193; Penna. R. Co. v. Butler, 57 Pa. 335.

Opinion of the Court.

*Mr. John G. Johnson* (with him *Mr. Thomas Diehl*), for the appellee.

Counsel cited: Lombard Ry. Co. v. Steinhart, 2 Penny. 358.

OPINION, MR. JUSTICE McCOLLUM:

May Summers, a child four years old, by her next friend and father, brought this action against the Bergner and Engel Brewing Company, to recover damages for injuries she received by being run over on a public street in Philadelphia by a team and wagon belonging to the defendant company and then engaged in its work and in charge of its employee. It is alleged that the accident was the result of the negligent driving of the team. There was evidence that at the time of the occurrence the driver was asleep, and that the team was on a descending grade and going at a rapid gait. The child when discovered was upon her feet and being turned around between the fore legs of one of the horses, but before she could be rescued she was thrown down and struck by one wheel of the wagon and sustained injuries from which she has never recovered, including the loss of the sight of one eye. The negligence and the accident were, under the evidence, closely connected, and to the ordinary observer inseparable. The inference that the former caused the latter is not a strained one, but a reasonable and natural result of the testimony. Aside from the statement of the driver, whose account of the affair was incoherent and confused, there was nothing to indicate that the child ran hastily or impulsively under the horses or the wagon, and certainly there is no presumption that she did so. Besides, a child four years old cannot be held responsible for contributory negligence. We cannot assume that she was a trespasser, or that her actions were negligent and rash, merely because her evidence fails to explain how she became involved in the peril in which she was discovered. In the absence of testimony on this point, the reasonable inference is that she was run over while crossing or playing in the streets ; and when, as here, it affirmatively appears that the driver was asleep and the heavy team and wagon were moving down grade at a rapid gait, it is a question for the jury whether the negligence of the defendant caused the injuries.

In Hestonville Co. v. Connell, 88 Pa. 520, cited by the appellant, it was held that there was no defect in the car, or

neglect in its management, and that the company was not responsible for injuries received by a child from his sudden and unexpected attempt to mount the front platform of the car while the driver, who was also conductor, was on the rear platform and could not have foreseen or guarded against the act; but Mr. Justice GORDON, in delivering the opinion of the court, said; "It is not a case of mere negligence on the child's part, as if it had been run over whilst crossing or playing in the street: that would raise a question very different from the one in hand." In Lombard Ry. Co. v. Steinhart, 2 Penny. 358, substantially the same questions were raised that we are invited to consider in this case, and they were decided against the company. There is a striking resemblance between the company's sixth point in the case cited, and the appellant's third point in the case under consideration. In Lombard Ry. Co. v. Steinhart, supra, the plaintiff recovered a verdict in the court below, and in affirming the judgment this court said: "The main question, then, was whether the negligence of the railway company caused the injury. While some of the evidence was conflicting, yet there was amply sufficient, if believed, to justify the jury in finding it as a fact. There was evidence that the driver of the car was intoxicated, and driving at a rapid rate of speed, without giving that attention to the observance of any object on the track which his duty required."

There was no exception taken in the court below to the admission of evidence that the loss of sight was attributable to the accident, nor was the court requested to withdraw it from the jury. It is now suggested and argued that the testimony on this point was insufficient to justify an inference that the defect of vision was the result of the casualty, and we are requested to convict the court below of error, because there was not an unsolicited instruction to that effect. It is an unusual request, but as we think the testimony of the experts required the jury to determine whether the loss of sight was one of the disabilities caused by the accident, we dismiss it without further comment.

The record of the suit in the Court of Quarter Sessions, between the commonwealth and John Dillenz, was not relevant to this issue and was therefore properly excluded.

The specifications of error are overruled and

　　　　　　　　　　　　The judgment is affirmed.