NATIONAL HOSIERY & YARN COMPANY *et al. v.* JOHN
NAPPER, Administrator.

(*Nashville.*  December Term, 1910.)

1. EMPLOYER AND EMPLOYEE.  Instruction that employee
must fully understand risks and dangers to release employer
from liability for personal injuries or death.

In an action against an employer for personal injuries result-
ing in the alleged wrongful death of an employee, an instruc-
struction calculated to mislead the jury into believing that,
though the employee was killed while disobeying orders and
as a consequence thereof, it must appear that the employee
fully understood the risks and dangers of disobedience, in
order to release the employer from liability, is erroneous; for
the law is clear that if a servant is injured while engaged in
disobeying the orders of his superior, he cannot recover.  (*Post,
pp.* 160-169.)

Cases cited and approved:  Railroad v. Wilson, 88 Tenn., 316;
Railroad v. Reagan, 96 Tenn., 128; Card v. Wilkins, 61 N. J.
Law, 296; McMellen v. Union News Co., 144 Pa., 332.

2. SAME.  Same.  Instruction making employee's understanding
of risk to depend upon directions of employer's foreman is
erroneous as invading province of jury.

The court's charge which makes the employee's understanding
of the risk and dangers of the disobedience of orders to depend
upon statements and directions of the employer's foreman
is erroneous as invading the province of the jury.  (*Post, pp.*
160-169.)

3. SAME.  Employee, whether adult or minor, need not be warned
of danger of disobeying orders of his superior.

The employee, whether adult or minor, need not be warned of the
danger of disobeying the orders of his superior in order to
prevent a recovery for his injury or death.  (*Post, p.* 169.)

4. **PRACTICE.** Appellant cannot complain of court's statement of his contention, where no objection was made at the time.

The appellant cannot complain that the trial judge incorrectly instructed the jury as to the ground of his contention, where the judge's statement was not objected to by him at the time so as to give the judge an opportunity to correct the same, by special requests or in other form. (*Post, pp.* 169, 170.)

Cases cited and approved. Hayes v. Cheatham, 6 Lea, 1, 7; McColgan v. Langford, 6 Lea, 108, 116, 117; Malone v. Searight, 8 Lea, 91; Slattery v. Lea, 11 Lea, 9, 12.

5. **NEW TRIALS.** Motion sufficiently specifying the errors and grounds therefor, under a rule of court requiring the same.

A court rule requiring that a motion for a new trial shall specify the errors and the grounds on which the motion is based is complied with by specifying the particular passages of the charge complained of, and it does not require a statement of the reasons why the mover believes that there was error in the portion of the charge specified. (*Post, pp.* 170-172.)

Case cited and distinguished: Railroad v. Johnson, 114 Tenn., 632.

6. **EMPLOYER AND EMPLOYEE.** Trial judge should determine, and not leave it to the jury to determine, whether the employer's subsequent order rescinded his former order to employee.

Where plaintiff's intestate, a boy sixteen years old, in the employ of defendant, was ordered with another boy to take, on the elevator, a heavy work bench from the basement to another floor, and in doing so received a fatal injury, owing to the legs of which bench coming in contact with a beam which projected into the elevator shaft, it was for the trial judge to determine whether such order rescinded an order given on the day before the accident that intestate should not take anything on the elevator which must be placed on end, so as to excuse intestate's disobedience thereof. (*Post, pp.* 162, 172-175.)

Hosiery & Yarn Co. v. Napper.

7. **SAME. Employee unable to comply with orders without violation of instructions should ask for further instructions, and his failure to do so is contributory negligence as a matter of law.**

Where deceased, a boy sixteen years of age, was directed by his foreman to assist another boy in removing a bench from the basement and was directed by the foreman at the time or at a previous time not to attempt to bring anything up on the elevator, which it was necessary to stand on end, and the boys found it necessary to stand the bench on end to get it on the elevator, and it was too heavy for the boys to take up the steps, it was the duty of deceased to report to his foreman and ask for further instructions, and his failure to do so was a disobedience of orders, and he was guilty of contributory negligence as a matter of law. (*Post, pp.* 162, 172-175.)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County, to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. —THOS. E. MATTHEWS, Judge.

W. H. WILLIAMSON and J. M. ANDERSON, for plaintiff in error.

W. S. LAWRENCE and W. H. WASHINGTON, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case is before us under the writ of *certiorari*, bringing up for review the judgment of the court of civil appeals.

We copy from the opinion of that court the following brief and correct statement of the facts:

"This suit was brought in the circuit court of Davidson county to recover damages because of the alleged negligence of defendants below resulting in the death of Robert Napper, a boy sixteen years old, the son of plaintiff below, who is the defendant in error. The suit was brought against the National Hosiery & Yarn Company and Nashville Saddlery Company Corporation, and H. H. McPhail and J. H. Thomas. As the result of a trial before a jury below, a verdict was directed and rendered in favor of the Nashville Saddlery Company, of which no complaint is made, but a verdict was rendered against the other defendants for $8,000, and on this verdict judgment was entered. The case has been brought by these defendants below to this court by appeal in the nature of a writ of error.

"The undisputed facts necessary here to be stated are these: Robert Napper, the deceased, received the injuries from which he died, while in the employ of the plaintiffs in error, and after being in their service for about four days. On the fifth day he and another boy named Richardson, aged about fourteen, were engaged in taking what is called in the record a table or work bench from the basement of the building in which they were at work,

to another floor in an elevator. This table or work bench was too long to be placed in the elevator by setting it on its legs on the floor or bottom of the elevator, so the boys stood it up on end, and, in doing this, so placed the legs at the upper end as to make them project beyond the casements or walls of the elevator and go into the elevator shaft. Having thus placed the table or work bench, the boys got in the elevator and started it up. The legs that were projecting over into the shaft came in contact with a beam which existed eight and one half inches from the back wall of the shaft, and within two and one half inches of the casing or walls of the elevator; but, because of the play or wabbling of the elevator within the shaft, this distance could be reduced below two and one half inches. The bringing of the legs in contact with the beam had the effect of shoving forward the body of the table or work bench, and this threw Napper forward against another beam with such force that some of his teeth were broken out, his head was crushed more or less, and his neck broken, from which injuries he died in about eight minutes.

"The declaration alleges negligence on part of the defendants below in allowing the beam to extend into the shaft in dangerous proximity to the elevator, and in negligently sending or permitting the deceased to be placed in this dangerous position to work, and in negligently failing to give him warning and instructing him of these dangers, which dangerous conditions it is alleged were

known to the defendants below, but unknown to the deceased.

"On the trial below there were sharp conflicts and direct contradictions in the testimony on almost every material question of fact, so that it cannot be contended, and in fact is not contended, that there is no evidence to support the verdict of the jury.

"The assignments of error are all based on the charge of the court to the jury and the failure of the court to charge certain requests. In order to fully consider some of these assignments of error, it is proper to set out the testimony of one J. W. Sanders as to certain instructions he swears to having given Napper and Richardson, the two boys who were in the elevator at the time of the infliction of the injuries from which Napper died. The testimony of this witness on this question is as follows:

" 'Well, the day before the accident occurred I sent them over there and went with them myself to where the accident occurred and took the two boys up to the elevator. I had some long pieces of steel shafting to move, and a table or work bench, and I took them up to the elevator shaft, where it comes down, and I said. "Now boys, whatever you do, don't haul anything on this elevator up or down that you have to stand on end." I said, "now you remember that," for I said I had come very near getting hurt on several different occasions myself that very day, and the boys both replied and said, "all right," and that was the impression they left on my mind, they would stay away from the elevator with that stuff, and

I stayed with them until they brought the shafting out and up to the tower of the mill.' "

"It is proper to say in this connection that there is much conflict in the evidence as to what was said to the two boys on the day of the accident and just before it occurred, and at the particular time they were told to go and get the table or work bench. Some of the testimony is that they were told by Sanders to bring it up on the elevator, and other testimony is that they were told to bring it up the stairway, and still other testimony is that they were told to bring it up without being directed how. There is also direct conflict on the question of whether or not employees, and especially children, had been directed generally to not go up and down on the elevators, or had been permitted and encouraged to so go. Some of the witnesses swear that notices were posted on various floors of the building in which the elevator was run prohibiting the employees from using the elevators, and others swear that they were not only permitted to use them, but that they were encouraged to use them, one girl sixteen years of age going so far as to swear that they were directed to ride on them, and that she had been discharged because she refused to go up and down on the elevators. There is this same conflict as to what was said to Napper about the use of the elevators on the day he was employed."

The first, second, and fourth assignments of error are based upon parts of the following excerpt from the charge:

(1) "There is evidence tending to prove that on the day before the accident the foreman, Sanders, had told these two boys, Richardson and Napper, when they were instructed to bring up shaftings, not to put anything on the elevator which was so long as to require heading up, and defendants say that the disobedience of this order or instruction by both boys, it being fully understood by them, and the risk and danger fully appreciated, as defendants contend, was the direct and proximate cause of the injury and death complained of in this suit. Hence, they say that deceased's own negligence contributed to his death, and that therefore his blood is on his own head and not on their hands. If, from the preponderance of the evidence, you find the contention to be the truth of the case, then, in that event, your verdict must be for defendants. But plaintiff insists that, on that very day of the accident, this same foreman ordered these same two boys to bring up from the basement to the story above a work bench or table weighing a hundred and fifty pounds, which, it is insisted, was too heavy and beyond the strength of these two boys to carry up the stairs, and yet was of such dimensions as to make it impossible for them to carry it up on the elevator, except by heading it up."

(2) "Plaintiff insists that the order given on the day of the accident, if it was so given, necessarily repealed, rescinded, or countermanded the order of the day before, to the extent that the two boys were in conflict. How this matter is, I leave for the jury to determine."

Hosiery & Yarn Co. v. Napper.

(3) "I charge the jury further that in determining whether the deceased, a boy of sixteen years of age, was guilty of contributory negligence or an assumption of the risk, the jury have a right to take into consideration his age, capacity, and experience, the length of time he had been employed in defendants' business and establishment, and although he may have been guilty, in the opinion of the jury, of an act or acts which in an adult would have amounted to an assumption of the risk of the injury and a waiver of the.duty the master owed him, or have amounted to contributory negligence, yet deceased cannot be held to have been guilty of contributory negligence and cannot be held to have assumed any such risk or to have waived such duty which one of his age, discretion, and experience could not fully comprehend or appreciate."

(4) "You will not understand me to say, or to intimate, that he did or did not fully understand and appreciate the risk. I say the law is that if he did not himself fully understand and appreciate the risk, and no one pointed it out and explained it to him in such a way as to bring it within the reach of his capacity and understanding, then he did not assume the risk, nor was he guilty of contributory negligence. This is the law; the facts are for the jury to find from the preponderence of all the evidence."

(5) "On the other hand, you are instructed that if you believe from the evidence that the deceased and his co-worker and fellow-servant, the Richardson boy, were

expressly instructed by their foreman, Sanders, on the
day before the accident, not to carry anything up on the
elevator that required to be headed up, and that, when
they used the elevator for carrying up any freight what-
soever, they were to start the elevator by manipulating
the ropes, while they must remain on the basement floor,
and that the elevator would stop automatically when
it reached the floor above, and that the boys must ascend
and descend by the steps; and if the jury further finds
from the evidence that all this was clearly brought home
to the deceased boy, and fully explained to him so that he
fully understood the risk and dangers of disobedience,
and that nevertheless deceased and his co-worker and
fellow-servant disobeyed their said orders and instruc-
tions, at the time fully understanding and appreciating
the risks and dangers from so doing, either because those
risks and dangers had been explained and made plain to
them, or because those risks and dangers were so open
and obvious as to need no explanation, even to a boy of
the age, understanding, and experience of deceased; and
if you further believe from the evidence that the meth-
ods adopted by deceased and his said co-worker and fel-
low-servant were dangerous, and that the adoption of
those methods was the direct and proximate cause of the
accident—then, in that case, plaintiff cannot recover,
and your verdict must be for the defendant."

For convenience of reference, we have numbered the
foregoing paragraphs excerpted from the charge, with
the numbers 1 to 5 inclusive, although they are not so

numbered in the charge as it appears in the record. These paragraphs appear, however, in the record, in the sequence we have given them here. Plaintiffs in error have not assigned error upon these paragraphs in their order; but on the contrary, the first assignment is to the fifth paragraph, and the second assignment to the first paragraph, and the fourth assignment to the second paragraph.

The first and second assignments, however, are upon the same subjects, as are the first and fifth paragraphs of the charge to which they are assigned. The substance of these assignments is that the trial judge instructed the jury, in effect, that although they should find that the deceased was acting in violation of the orders of his employer, or master, when in conjunction with his co-worker he put the work bench on the elevator, and headed it up, yet his administrator could recover, unless it also appeared that the risk and danger of such disobedience had been fully explained to him, and he understood and appreciated such risk and danger; or, to state the point differently, that, as a condition of plaintiffs in error's exoneration, it must not only appear that the deceased acted in violation of his employer's instructions, but that the risk and danger of such violation had been explained to him, and he fully understood and appreciated such risk and danger.

To bring out the full meaning of these two paragraphs as they bear upon the point suggested, we shall read

them together, and paraphrase them. So treated, they are as follows:

In the first paragraph the judge told the jury that there was evidence tending to prove that on the day before the accident, Sanders (plaintiffs in error's foreman) had told the boys, when he was instructing them to bring up the shafting, not to put anything on the elevator which was so long as to require heading up, or being placed on end, and that the plaintiffs in error contended that this instruction was fully understood by the boys, and that they also fully appreciated the risk and dangers, and that the disobedience of this order by them was the proximate cause of the injury and death complained of in this suit. He further told the jury that, if they found this contention to be true, under the preponderance of the evidence, the verdict should be for the defendants, now plaintiffs in error.

The residue of the first and second paragraphs is on other subjects, and need not, at this time, be specially referred to. In the third paragraph his honor took up the subject of the assumption of risk and contributory negligence, and in that connection called attention to the facts of the age, capacity, and experience of the employee, and the length of time he had been in service. Closing up this matter, the court continued: "You will not understand me to say, or intimate, that he did or did not fully understand or appreciate the risk. I say the law is that if he did not himself fully understand and appreciate the risk, and no one pointed it out and ex-

plained it to him in such a way as to bring it within the reach of his capacity and understanding, then he did not assume the risk nor was he guilty of contributory negligence." His honor was here considering a case wherein an employee of immature capacity is placed in a dangerous position, where he does not himself understand the dangers; that is, where they are not obvious, or where he has not been instructed in respect of them. He then turns to a case where an express order is given and has been disobeyed. He introduces this obverse view with the expression, "on the other hand." He says to the jury that if they believe from the evidence that the deceased and the Richardson boy were expressly ordered by the foreman on the day before the accident not to carry anything up on the elevator that required to be headed up, and that when they used the elevator for carrying up any freight at all they were to start it by manipulating the ropes, while they themselves remained on the basement floor, and that the elevator would stop automatically when it reached the floor above, and that they must ascend and descend by the steps; and continued: "And if the jury further finds from the evidence that all this was clearly brought home to the deceased boy, and fully explained to him, so that he fully understood the risk and dangers of disobedience, and that nevertheless the deceased and his co-worker and fellow-servant (the Richardson boy) disobeyed their said orders and instructions, at the time fully understanding and appreciating the risks and dangers from so doing, either because those

risks and dangers had been explained and made plain to them, or because the risks and dangers were so open and obvious as to need no explanation, even to a boy of the age, understanding, and experience of deceased; and if you further believe from the evidence that the methods adopted by the deceased and his said co-worker and fellow-servant were dangerous, and that the adoption of those methods was the direct and proximate cause of the accident—then, in that case, plaintiff cannot recover, and your verdict must be for the defendants."

It is insisted in the assignment of errors that the trial judge in this part of the charge misled the jury into the belief that, although the deceased was killed while disobeying orders, and as a consequence thereof, yet it must appear, before his case could be defeated by such disobedience, that he fully understood the risk and dangers of the disobedience, and performed the act which cost him his life nevertheless.

We think this is the proper construction of the portion of the charge referred to. The court of civil appeals took a different view, holding that the trial judge meant to say that, if the things just preceding the matter just quoted had been made known to the boys, they would have fully understood the said risks and dangers. This construction, we think, is not only incorrect, but makes the trial judge invade the province of the jury.

The law is clear, of course, that, if a servant is injured while engaged in disobeying the orders of his superior, he cannot recover. *Railway Co.* v. *Wilson*, 88 Tenn.,

316, 12 S. W., 720; *Railroad* v. *Reagan,* 96 Tenn., 128, 33 S. W., 1050; *Card* v. *Wilkins,* 61 N. J. Law, 296, 39 Atl., 676; *McMellen* v. *Union News Co.,* 144 Pa., 332, 22 Atl., 707; Thompson's Law of Negligence, secs. 5375, 5396. Minors as well as adults are within the rule; and the mere fact that the servant was not warned that the prohibited act was dangerous does not make the rule any the less applicable, or the doing of the act any the less culpable. 1 Labatt on Master and Servant, sec. 363.

It is insisted on behalf of the defendant in error that there was no affirmative error in this charge, since, if the various points concurred which were contained in the portion of the charge referred to the conclusion that there could be no recovery would undoubtedly follow hence there was no affirmative error, and that it was the duty of the plaintiff below to offer a special instruction to the court to limit the charge to the exact point desired.

We think the error was an affirmative one, since, when the portion of the charge in which it appears is taken in connection with the context, it could not have failed to mislead the jury.

However, this error is not available to the plaintiffs in error in the present case, because, in the first paragraph quoted from the charge, supra, the trial judge stated to the jury, without objection or protest on the part of plaintiffs in error's counsel, that such was the contention of the plaintiffs in error. If plaintiffs in er-

ror made such contention, they misled the trial judge into the error now complained of. If the trial judge misconceived the contention of the plaintiffs in error, it was their duty, through their counsel, to protest at the time, and have the proper correction made by special request of other form, before the case was finally given to the jury. The rule upon this subject is the same as that which applies when a trial judge, in his charge to the jury, assumes a fact to be conceded, or makes an assumption in the charge based upon the course of the party in the court below and acquiesced in by that party at the time as correct, or that a certain contention is the real matter of contention between the parties. *McColgan* v. *Langford*, 6 Lea, 108, 116, 117; *Hayes* v. *Cheatham*, 6 Lea, 1, 7; *Malone* v. *Searight*, 8 Lea, 91; *Slattery* v. *Lea*, 11 Lea, 9, 12. It was held in the cases cited that it is the duty of the trial judge to narrow the issues as much as practicable in order to facilitate the labors of the jury.

Defendant in error insists in this court, as he did in the court of civil appeals, that the error above referred to could in no event be available to plaintiffs in error because it was not sufficiently pointed out in the motion for new trial, as required by the rule of that court. After what has been said, we should not refer to this subject but for the fact that an important point of practice is presented.

The rule referred to requires that motions for new trial "shall specify the errors claimed to have been com-

mitted on the trial, or the grounds on which the motion is based." The rule was fully complied with in the court below by specifying the particular passages of the charge complained of. It was held by the court of civil appeals that it was the duty of the party moving for a new trial to go further and to specify the reasons why it was believed by the movant that there was error in the portion of the charge specified, and the case of *Railroad* v. *Johnson,* 114 Tenn., 632; 88 S. W., 169, is referred to as authority for the proposition. That case does not sustain the point, and the practice has never been so understood, so far as we know. Such a requirement would expand motions for new trial into all the voluminosity of "briefs" and printed arguments. Moreover, it would be unjust to counsel, since in the hurry of *nisi prius* trials it would be impossible for them to make objections so minute; passing, as they do and must do, rapidly from one case to another. The dangers consequent upon such a requirement were perceived by the court of civil appeals, and that court said that there need not be such particularity as is required for assignments of error in appellate courts. But where should the line be drawn? The ascertainment of this line would be a source of great distress to counsel, and of much perplexity to the appellate courts, as well as to the trial court. It is argued in behalf of the requirement suggested that a party might cut up a charge into as many sentences as composed it, or into as many subjects as it treated of, and say that each was error. Of course, such a colorable specifica-

tion would not be tolerated. In the present case, each specification in the motion for new trial is directed to a specific error supposed to have been committed by the trial judge, either in a part of his charge copied into the motion, or in respect of some instruction offered and refused.

The fourth assignment is based upon the part of the charge which we have marked above as paragraph No. 2, which paragraph, in order to be properly understood, should be taken in connection with paragraph No. 1.

Under this assignment it is insisted that it was the duty of the trial judge, instead of leaving to the jury the question whether the subsequent order which was given countermanded the former one, to have himself construed the two orders and told the jury whether or not they were in conflict.

This assignment should be considered in connection with the fifth, which makes the point that the trial judge committed error in not instructing the jury that the second order was not an abrogation of the order given upon the previous date.

We are of the opinion that the trial judge committed error in giving the instruction complained of in the fourth assignment, but that he would also have committed error if he had given the request which is referred to in the fifth assignment, because that would have misled the jury. This whole matter is covered by the request, refusal to give which is made the subject of the third assignment, and we now pass to that subject.

The third assignment is based upon the failure of the trial judge to charge the following special instruction:

"If you believe that the preponderance of the evidence is to the effect that the deceased, Robert Napper, was directed by his foreman to assist another boy in removing this bench or table from the basement of the saddlery building, and was told by the foreman, at the time he was directed to assist in this work, or at any previous time, not to attempt to bring anything up on the elevator which it was necessary to stand on its end, and if you find upon a preponderance of the evidence that, when the deceased and the other boy went to put this bench on the elevator, they found that it would be necessary to stand it on its end to get it on the elevator, and if you find that the bench was too heavy for these boys to take up the steps, then it was the duty of the deceased to report these facts to his foreman, and ask further directions; and if you find he did not do this, but at the time of his death was disobeying orders, and that disobedience contributed as a part of the proximate cause of the accident and his resulting death, then, and in that event, your verdict should be for the defendants."

The point of the instruction is that the deceased and his co-worker should, upon appearance of the facts stated, have asked the foreman for further directions; that is, if they could not take the bench up the steps themselves because it was too heavy, and could not carry it up on the elevator without putting it on the end, then they should have resorted to the foreman for instruc-

tions as to what they should do under this State of facts, instead of proceeding to put the bench on the elevator. The case supposed is one where the servant was unable to comply with one order because of physical inability, and unable to comply with the other because of moral inability, or violation of duty; that is, disobedience of orders. Of course, it is clear, under such state of facts, it is the duty of the servant to call upon the principal, or vice-principal, for further instructions. It is said by counsel for defendant in error that this is a conclusion of fact and not of law. We think this is a mistaken view. All men must agree that putting the bench on the elevator under the state of facts supposed in the request would constitute negligence *per se,* or negligence in law; or, stated differently, that the attempt to act under such circumstances without applying to the principal or vice-principal for further instructions would be negligence in law. We think the instruction should have been given.

It was said upon the argument at the bar that there was no evidence that the work bench was too heavy to be carried up the stairs by the boys. Evidently the argument was made by counsel in the court below based on the weight of the bench, one hundred and fifty pounds, and its length and breadth and thickness, showing its bulk, and the age of the boys; they being about fourteen years of age. At all events, the defendant in error, as shown by the paragraph which we have marked No. 1 from the charge, made this contention, and assumed such fact to have been proven, and it was proper that the

instruction just referred to on the same subject should have been given in order to enable the jury to fully apply the law to the facts.

The matters embraced in the sixth and seventh assignments are sufficiently covered by the charge of the court, and need not be further referred to.

The eighth and last assignment is upon the subject of the amount of damages; but that need not be considered, as the judgment of the court of civil appeals and of the court below must be reversed for the error above indicated in refusing to give the special instruction mentioned.