# GENTRY v. STATE.

## (*Knoxville* September Term, 1946.)

### Opinion filed January 11, 1947.

RALPH W. DUGGAN and H. M. GREGORY, both of Athens, HOBART F. ATKINS, of Knoxville, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE PAUL CAMPBELL delivered the opinion of the Court.*

The plaintiff in error was charged with driving an automobile, while under the influence of an intoxicant or narcotic drug, through the streets of Etowah, and killing one Alfred Harris. There was a verdict of manslaughter and his punishment was fixed at confinement in the penitentiary for a period of not less than one year nor more than five. Plaintiff in error has appealed in error to this Court. The plaintiff in error has assigned some fifteen errors which will be taken up in their order.

The first two assignments are to the effect that there is no evidence to support the verdict of the jury and that the evidence preponderates against the verdict of the jury and in favor of the plea of not guilty.

The jury in this case apparently accepted the theory of the State which was to the following effect:

*Sitting for Mr. Justice Chambliss.

The defendant was driving his automobile northwardly along Ohio Avenue in the city of Etowah. There was a stop sign at the junction of Ohio Avenue with Eighth Street. This stop sign required vehicles coming north on Ohio Avenue to stop for traffic along Eighth Street which ran east and west. The defendant did not stop his car as required by this stop sign, but proceeded at a fast rate of speed into Eighth Street. As the defendant's automobile reached the intersection of Ohio Avenue and Eighth Street, a car driven eastwardly by Arthur J. Grubb struck defendant's car in the side toward the rear of the car. At this moment there were standing at the curb of the northeast corner of the intersection of Ohio Avenue and Eighth Street three people, Alfred Harris, his wife and baby. As a result of the collision the car of plaintiff in error, defendant below, made one and one-half turns, seeming to fly through the air, and across the corner striking these people and going backward some 115 to 125 feet from the corner into a yard and almost into the steps of the library. Alfred Harris received injuries from which he subsequently died. The plaintiff in error was intoxicated at the time.

The assignments complain that the evidence does not sustain the verdict. There was a conflict in the evidence. The plaintiff in error and his brother denied that the plaintiff in error had been drinking prior to the accident, the brother stating that he took the plaintiff to the hospital immediately after the accident and could not smell liquor on his breath. The testimony is weakened, however, by the fact that the brother himself was arrested that same day for driving while drunk and, while the case was subsequently nolled, he paid the costs. There was an effort to prove that the accident was due to the negligence of Mr. Grubb, who was claimed to have been

driving on his left or wrong side of Eighth Street at the time of the accident. There was evidence for the defendant below, plaintiff in error here, that he did stop at the intersection, as required by the sign which he acknowledged having seen. However, the jury considered this evidence and accepted the theory of the State. There was evidence from a number of witnesses to the effect that the defendant was drinking and was drunk, Dr. Foree stating that he was intoxicated, and others testifying as to his intoxication evidenced in various ways.

There was a sharp conflict as to whether or not the plaintiff in error stopped at the intersection, but the jury accepted the testimony of a State's witness who had no interest in the case and who testified flatly that he did not stop but, on the contrary, proceeded at a fast rate of speed. There were other conflicts of evidence, but the jury resolved them in favor of the State.

After a careful reading of this evidence, we are unable to say that the evidence preponderated against the verdict of the jury, consequently the first two assignments are overruled.

█ The third, fourth, fifth, sixth and seventh assignments assign as error the failure of the Court to give to the jury certain requested instructions. The bill of exceptions in this case does not contain any reference to requested instructions, nor does it set out any such request for instructions. In view of this, these assignments cannot be considered by the Court.

In *Frazier* v. *State,* 117 Tenn. 430, 449, 100 S. W. 94, 99, the Court said:

"We cannot, however, consider these requests. They are not made a part of the record, and we cannot know that they were seasonably presented to the court, in the proper form, or in the language in which they appear

in the transcript. It is too well established to require citation of authority that, to enable this court to review the action of the trial court in refusing to instruct the jury in accordance wih special requests made by the parties, it must appear in the bill of exceptions that the requests were presented in writing at the conclusion of the general charge, and acted upon by the court, and the requests made a part of the record. This was not done in this case. There is no reference in the bill of exceptions to them. It is immaterial that they are set out in the motion for a new trial, made in the court below. It has frequently been held by this court that this does not make them a part of the record. The motion for a new trial is not the action of the court. It is the statement of the plaintiff in error, and the facts therein recited may or may not be true."

█ The eighth assignment of error is that the Court erred in charging the jury as follows:

"In other words, if a person drives an automobile while under the influence of intoxicants, and his automobile collided with another automobile, causing the death of an occupant in the other automobile or some other person, the person driving the automobile while in an intoxicated condition would be guilty of involuntary manslaughter regardless of whether the driver of the other automobile was guilty of contributory negligence."

The brief of plaintiff in error does not disclose clearly the error complained of in this part of the charge.

However, we think that the charge of the Court under the circumstances was a correct charge. In *Keller* v. *State,* 155 Tenn. 633, 299 S. W. 803, 804, 59 A. L. R. 685, the plaintiff in error was charged with driving an automobile while under the influence of an intoxicant and killing a person. There was a verdict of involuntary

manslaughter and the plaintiff in error appealed. One of the assignments raised the question of the contributory negligence of the person who was killed. The Court, in that case, held that the driving of an automobile upon the public highways of the State by one "Who is under the influence of an intoxicant" is an unlawful act *malum in se*. The Court observed that it is highly criminal and perilous to life and property for those under the influence of an intoxicant to such an extent "As to deprive them of their sense of discretion" to undertake to run such a machine on the thoroughfares. The Court said in that case:

"Such being our view of the matter, we think the policy of the law forbids an investigation as to probable consequences, when the driver of an automobile 'under the influence of an intoxicant,' as heretofore defined, runs his car over another person and kills him on the public highways of the state. There are many things that sober man, in the exercise of due care, would do to avoid such a collision, which would be entirely beyond an intoxicated driver. . . .

"There is nothing radical or novel in this conclusion. The efficient cause of this accident was the operation of this car by plaintiff in error while under the influence of an intoxicant. Matters urged by way of defense merely amount to a charge of contributory negligence on the part of deceased and the rule of contributory negligence does not apply in criminal cases *Lauterbach* v. *State,* 132 Tenn. 603, 179 S. W. 130."

We think the holding in the *Keller Case* applicable in the instant case. Under the State's proof the plaintiff in error ignored a stop sign and was driving his car across the intersection with such momentum that when struck

by another car its forward motion was not arrested but the car running backward went something like 125 feet before stopping.

Accordingly this assignment is overruled.

■■ The ninth assignment is that the Court erred in failing and refusing to state fully the theory of the defendant. This assignment is too vague an assignment to apprise the Court as to wherein the trial court was deficient in its statement of the defendant's theory of the case. Further, if the charge of the Court was too meager, it was the right and also the duty of the plaintiff in error to submit requests setting forth the omitted theory and to request the trial Judge to give it in the charge. *National Hosiery & Yarn Co.* v. *Napper,* 124 Tenn. 155, 135 S. W. 780.

■ The tenth assignment of error is to the effect that the Court erred in refusing to allow defendant's counsel to ask a prospective juror, Joe Neil, "if he believed a man innocent until proven guilty," which question was asked after defendant's challenges had all been exhausted. We think that the question is susceptible to criticism and that the Judge's action was proper. The defendant is entitled to the benefit of the presumption that he is innocent until proven guilty, but a juror is not required to go so far as to believe him innocent until proven guilty. The duty of a juror is under the instruction of the court to give the defendant the benefit of the presumption of innocence, but he is not required to indulge in a belief that the defendant is innocent. The juror may properly feel that the State has not made out its case and that there is doubt as to the defendant's guilt. He may feel that a Scotch verdict should be given, "not proven," but there is no requirement that a juror should believe that

the defendant is innocent at any time. The ground of the State's objection does not appear, nor does the basis of the Court's ruling appear. We think the question sought to be propounded to the juror was too broad and went to an unjustified extent.

 The eleventh assignment of error is that the defendant was not allowed adequate time in which properly to defend his case. This assignment is vague. However, it appears from the record that the defendant was indicted on February 4, 1946, and that the trial took place on June 6, 1946, a little over four months from the return of the indictment. In the absence of more detailed basis for this assignment we cannot say that the defendant did not have sufficient time in which to defend his case properly. If it be based upon the inability to secure the testimony of the two witnesses who were out of the State, there is nothing in the bill of exceptions to show what these witnesses would have testified if present, and the materiality of their testimony and the prejudice to defendant's case through lack of this testimony do not appear. Therefore, this assignment is overruled.

██ The twelfth assignment is that the jury in returning their verdict after only five or ten minutes deliberation did not and could not have calmly and dispassionately considered the evidence in the case. Associated with this assignment is the thirteenth assignment, which is to the effect that the fact that the jury deliberated not more than ten minutes indicates prejudice and caprice on the part of the jury.

We know of no requirement that the jury should take any particular amount of time in arriving at its verdict. The issues in this case were simple. There is no presumption that the brevity of the period of consideration

would indicate prejudice and caprice on the part of the jury. It might just as well have indicated the clear cut conviction on the part of the jury that the defendant was guilty and the lack of necessity for any argument or discussion within the jury room. Further, these assignments are based upon mere speculation on the part of the plaintiff in error and are not shown in any way to have any substantial basis. Accordingly, these assignments are overruled.

 The fourteenth assignment is based on the charge that the officers appointed to serve the jury remained in the jury room during the entire deliberation and voting upon the guilt or innocence of the defendant. It is improper for the officers to remain in the jury room, but something more should appear to warrant the Court in finding the plaintiff in error entitled to a new trial on that account. There is no charge that the officers communicated with the jury in any way or that they participated to any extent whatever in the deliberation of the jury or did anything further than merely to be present.

In 39 Am. Jur., New Trial, Sec. 106, p. 121, it is said: ''The jurors should be permitted to deliberate on their verdict in the privacy of the jury room without embarrassment from the presence of the bailiff or any other officer of the court, and there are decisions to the effect that the presence of the bailiff or other officer in the jury room during the deliberations of the jury operates as such a restraint upon them as to constitute ground for new trial even though no prejudice is shown and the officer did not in fact speak to the jurors. Other courts, however, do not apply such a strict rule; some have taken the view that the mere temporary presence of a bailiff in the jury-room door, without evidence of any communication regarding the case under trial, is not such mis-

conduct as to constitute ground for a new trial. Others hold that the granting of a new trial is not required by the fact that the court officer in charge of the jury remains in the jury room during their deliberations, in the absence of evidence that he took any part in the deliberations or that the verdict was influenced in any way by his presence.''

 However, it is not shown in the record that the affidavit of Leuty L. Owen charging the presence of the officers in the jury room was all the evidence heard on the motion for a new trial in connection with this matter.

In the case of *Eatherly* v. *State*, 118 Tenn. 371, 372, 101 S. W. 187, the Court said:

''It is next insisted that a rehearing should be granted because the court, in its former examination of the case, had declined to consider certain affidavits of the jurors and the officers in charge of the jury, offered in the trial court on the motion for a new trial; this court having declined to consider these affidavits because the record failed to state affirmatively that they constituted all the evidence heard and considered by the trial judge in his action on the motion for a new trial. . . . That a trial judge will not be put in error upon any ruling or judgment entered upon any question of fact, where the record fails to state affirmatively that it contains all the evidence heard by the court on that question, has been the settled rule of practice in this court for so long a period of time, and has become so thoroughly ingrafted upon the jurisprudence of the state as that it is no longer an open question. . . .

''It must affirmatively appear that it is complete in all its parts before consideration will be accorded. Counsel representing the petitioner seem to feel that the rule

is new, and has never been announced in any reported case; but such is not the fact. In the case of *Ransom* v. *State*, 116 Tenn. 355, 96 S. W. 953, it is said: 'The established rule of practice requires that it shall affirmatively appear from the bill of exceptions that it contains all the evidence heard by the trial judge on any plea or motion presenting disputed or controverted facts.' ''

In the absence of a recitation in the bill of exceptions that it contains all the evidence heard on the motion for a new trial, it must be presumed that other evidence was given offsetting the affidavit of Mr. Owen and that the trial Judge properly overruled this ground of motion for a new trial.

The fifteenth assignment of error is to the effect that the Court erred in not granting the plaintiff in error a new trial because of newly discovered evidence which purports to show that one of the State's witnesses, John Connor, who was a material witness, committed perjury in his testimony in the trial.

In support of this ground of motion there was attached an affidavit of P. B. Rowland to the effect that John Connor, a witness for the State, could not have seen the accident because he was working at a place where it would not have been possible for him to see the point where the accident occurred. John Connor did not state that he saw the accident but, on the contrary, said he did not see it but heard it. Further, another witness for the defense stated that he saw John Connor there. In addition, the bill of exceptions does not show that this affidavit was all of the evidence on this point heard in the court on the motion for a new trial.

Further, in 39 Am. Jur., New Trial, Sec. 167, p. 173, it is said:

"It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow. Newly discovered evidence, to be a ground for new trial, must go to the merits of the case, and not merely impeach the character of a former witness. In a criminal prosecution, an application for a new trial will be denied where it appears that the only tendency of the newly discovered evidence is to impeach or discredit the prosecuting witness or other witness for the state, or to contradict dying declarations." *Southwestern Transportation Co. v. Waters,* 168 Tenn. 596, 79 S. W. (2d) 1028.

Accordingly, this assignment is overruled.

It, therefore, results that the action of the trial court is affirmed.