IVAN BIVENS, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—474 S.W.2d 431.

August 17, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

582

Gene Worthington, Madisonville, for plaintiff in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, Tom Taylor, District Attorney General, Athens, for defendant in error.

DWYER, J. Retained counsel makes nine assignments of error contending that the jury's verdicts with judgments entered thereon of finding the defendant in a joint trial guilty of rape and murder in the second degree was had contrary to the law. The punishment for rape was fixed at fifty years. The punishment for murder in the second degree was fixed at not less than ten nor more than twenty years. The facts reveal that

in the early morning hours of May 16, 1970, the prosecutrix and her husband were awakened by a knock on the door. She answered the knock and a male voice inquired if her husband was there, with him going to the door and after a short conversation leaving in their car, stating he was going to help the caller. A short time thereafter she heard the car drive into the driveway. She opened the door and the defendant was standing there with a tire tool in his hand. He told her he came to do what he had to do and she told him if he would not hurt her she would do whatever he wanted. She noticed blood on his shirt and he said he had knocked her husband in the head. A youngster in the house, hearing his mother scream, entered the room. She told him to go back to bed, taking him back into the bedroom, telling him to go out the window and get help. When she went back into the room the defendant took her pajamas off and started intercoursing her. During this there was a knock at the door with her being allowed to answer and when she went to the door she ran outside, naked, and fled to her closest neighbor, the family of the defendant. At the trial she identified defendant as the one who raped her and related that his voice was the same as the one who came and sought her husband's help. She further related the man who had answered her young son's call for help looked just like the defendant, with the proof developing that it was his brother. A call was made for the Sheriff of Monroe County and when the investigating officers arrived they found the husband brutally beaten about the head, with resulting death. The postmortem examination established a non-fatal bullet wound in the head region. The defendant was apprehended late that afternoon at his sister's

house. His testimony and version is that he was out late that night and when he got to his home he changed clothes to go to an after-hours tavern for the purpose of getting something to drink. He took a shortcut through the woods which caused him to go by the deceased's home when the prosecutrix, who was on the porch, hailed him. He went into the house after being invited, with her making advances, kissing him about the mouth, ostensibly repaying him for helping start her car a few days prior when he had first seen her. He relates when they were intercoursing there was a knock at the door, with the prosecutrix going to the door naked and running out screaming. He then left, passed the car, heard moaning, looked in and saw the deceased. He entered the car and lifted deceased's head. When he saw how bad deceased was he fled because he thought he would be accused. As we view this record we can readily understand why the jury accredited the proof of the State and repudiated the testimony and defense of the defendant.

■■ He first contends the court erred in not granting a continuance. On the date of trial he moved for continuance and supported his motion with an affidavit that the witness Hilda Bearfield was material to the defense. The rule in regards to continuance in this State in substance addresses itself to the sound discretion of the trial judge and will not be disturbed unless there is a gross abuse of that discretion. See State ex rel. Carroll v. Henderson, Tenn. Cr.App., 443 S.W.2d 689, 692, 693. It further appears the test of whether or not he has abused that discretion may be found from a review of the facts in the after-trial. See State v. Rigsby, 74 Tenn. 554. In view of the overwhelming proof of guilt

established in this record we fail to see and find where, assuming everything the affidavit states to be true, this is material and would have affected the outcome. The assignment is accordingly overruled.

■ He next contends that the court erred in failing to instruct the jury to disregard the statement made by the attorney general indicating and stating that the State has no right of appeal. The unfortunate remarks came during the cross-examination of the prosecutrix. While we do not condone the action of the attorney general we do not feel that it falls within the ambit of the circumstances found in Gray v. State, 191 Tenn. 526, 235 S.W.2d 20. We hold that it was error for the court not to instruct the jury to disregard the remark but further hold that in these circumstances it was harmless. See T.C.A. 27-117. The assignment is overruled.

■ He next contends the trial court erred in limiting the cross-examination of the prosecutrix. He bottoms this upon the premise that chastity of the prosecutrix is material. See Guy v. State, Tenn.Cr.App., 443 S.W.2d 520, 522. He reasons that moral transgressions go to the witness's credibility. He bolsters this contention with the supposition that he is allowed wide latitude in his cross-examination and that it is fundamental, citing Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 40. We note that authority holds that the control of cross-examination addresses itself to the discretion of the court. The court disallowed cross-examination of the prosecutrix as to her present husband. The proof developed that she did not know him at the time of the murder or rape and did not marry him until two months after the

event. We do not find that the court erred in this. We further find that the defendant was allowed to ask her about separations and about her leaving the State with another man prior to the crimes. We do not feel the trial court abused its discretion in exercising control of the prolonged cross-examination in this record. The assignment is overruled.

The defendant next contends the court erred in not permitting certain witnesses called by the defense to testify, as follows: (1) Mrs. Kirkland, who testified when the jury was out, that the prosecutrix's mother had called her the morning of the event and related what the prosecutrix had told her. We find no error in ruling this testimony out. Further, it was not part of the res gestae. (2) A J. W. Compton, who sold the victim and the prosecutrix an insurance policy in January of 1970, which had lapsed at the time of the death. The trial court ruled that in the absence of any proof showing the prosecutrix's wife had any connection with the killing the evidence was immaterial. We agree. (3) A George Bivens, brother of the defendant, in not being allowed to testify how long it took him to drive from where the body was found and the scene of the killing as alleged by the State. The witness measured the distance at two miles by car. This was permitted to go to the jury. How long it took him to drive the distance we fail to see how and where this would enlighten the jury. It was for the jury to determine whether the defendant had time from leaving the victim to go to the scene if it be such and return to the victim's home, as we view the testimony. We find no error in the court's ruling. (4) A Frank Rose, who related he was with the deceased the day

before the homicide when they had a discussion. There is no proof as to what the discussion was about, but as we view this it certainly was not and could not classify as part of the res gestae. We cannot conceive under the facts and circumstances found in this record where a discussion between this witness and the deceased the day before the deceased was killed was contemporaneous, or in such spontaneity as to explain or enlighten the jury as to the killing. In substance, ''res gestae'' may be capsuled as to what is relevant. There is no set formula to measure what is res gestae, but it depends upon the facts and circumstances found in the record and in the final analysis addresses itself to the discretion of the trial court. Where it is doubtful, it should go to the jury. See defendant's cited authority, Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.2d 711, 719. We do not feel the court erred in disallowing the testimony. Further, there was no showing as to what and where this could be considered relevant. The assignment is overruled.

██ He next contends the court erred in not allowing defendant full benefit of his motion to produce in accordance with T.C.A. 40-2044. From the bill of exceptions it appears that there was a compliance with defendant's request, except as to the work products of the law enforcement agencies. We further note that the pistol handle parts were given to defendant on the date of trial. The State's proof developed that there was Type A blood found on some of the exhibits. The defendant testified that he had gotten blood on his shirt when he got in the car with deceased. Nevertheless, none of the exhibits inculpated or exculpated defendant. They

in no wise connected him with the crimes. The assignment is overruled.

■    The defendant next contends that the court prejudiced defendant by commenting on the evidence when he ruled on the various objections during the trial, indicating he was siding with the prosecution. In Veal v. State, 196 Tenn. 443, 268 S.W.2d 345, 346, cited by the defendant, the following may be found:

". . . The influence of the Trial Judge on the verdict of the jury is so great that no action nor word of the Trial Judge should be allowed to indicate the Judge's conclusion of guilt or innocence."

As we view this voluminous record with some forty or more witnesses testifying, we do not believe the trial judge, by his demeanor or manner in his rulings, prejudiced the defendant. Nor do we feel his rulings indicated he was siding with the State. The assignment is overruled.

■    The defendant next contends that the court erred in allowing the State to develop evidence about a prior conviction that was pending on appeal after the court had sustained defendant's objection to ask about the conviction. It appears that when the objection was sustained the attorney general then asked the defendant if he had not indicated to a deputy that he was going to turn himself in and go to the penitentiary. The defendant denied this and the State offered the deputy in rebuttal to impeach the defendant's testimony. We find no error in this and the assignment is overruled.

590

■ The defendant lastly contends the trial court erred in not granting a new trial on the basis of newly discovered evidence, which was unavailable at the time of trial. The affidavits filed in support thereof are two in number. The first relates to a witness observing the prosecutrix disciplining her son, who was a witness at the trial and who had identified the defendant. The crux of the affidavit is that the youngster was supposed to have testified at the preliminary hearing that the defendant was sitting on the couch drinking a glass of water with his mother at the time of the rape. The other affidavit reflects that the youngster told the affiant at the courthouse that his mother probably killed his father since the car had not been moved all night. The affidavits, in their most favorable light, could only be considered as contradictory and impeachment of the youngster, who was not the only material witness in this case. In Gentry v. State, 184 Tenn. 299, 311, 198 S.W.2d 643, 648, 649, quoting from 39 Am.Jur., New Trial, sec. 167, p. 173:

"It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears such new evidence can have no *other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness,* unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow." (emphasis added)

We do not think that if these witnesses had been allowed to impeach the youngster a different result would have been reached. The assignment is overruled.

He lastly contends the punishments meted out indicate passion, prejudice and caprice and that they are inconsistent. The punishment for both offenses falls well within the range as prescribed by law. It therefore cannot be argued that it indicates passion, prejudice or caprice. See Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500. The verdict of second degree is supported by the facts. When a homicide is shown, malice is presumed. See Lewis v. State, 202 Tenn. 328, 333, 304 S.W.2d 322. The assignment is overruled.

The judgments before entered in the trial court are affirmed.

Galbreath and Mitchell, JJ., concur.