**STATE of Tennessee, Appellee,**

v.

**Peyton Wayne ARNOLD, Appellant.**

**No. 85–92–III.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 13, 1986.

Permission to Appeal Denied by Supreme Court Sept. 15, 1986.

John G. Mitchell, Jr., Jeffrey S. Henry, Murfreesboro, for appellant.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Nashville, Thomas M. Bottoms, Pro Tem, Dist. Atty. Gen., Lawrenceburg, Robert W. Sands, Asst. Dist. Atty. Gen., Columbia, for appellee.

## OPINION

SCOTT, Judge.

The appellant, a practicing attorney, was convicted of obtaining personal property by false pretense and received a sentence of three years in the state penitentiary as a Range I, standard offender. His application for probation was granted and he was placed on probation for a period of five years and ordered to perform public service work.

Much aggrieved by his conviction, the appellant has presented eleven issues on appeal. Taken together, two of the issues challenge the sufficiency of the convicting evidence. Specifically, the appellant contends that the owner of the money, the Tennessee Bureau of Investigation, never intended to part with ownership, intending only to give him temporary possession. Therefore, he contends that he cannot be convicted of obtaining the money by false pretense. Furthermore, he contends that there was no promise or allegation by him that he would do anything in the past or present, but only an allegation of what he would do in the future.

Gregg Steven Leath was arrested on January 12, 1984 for five worthless check charges. Mr. Leath had approximately $1,500.00 in cash in his possession at the time of his arrest. He made arrangements to pay off the checks. However, a routine search of his automobile turned up small quantities of marijuana and cocaine and a stolen pistol. Mr. Leath contacted the appellant, whom he had known for some time, and asked him to represent him.

After Mr. Leath made bond, he went to the appellant's office to talk about the charges he was facing. The appellant described for Mr. Leath the possible prison sentence that he could receive and then told Mr. Leath that the matter could be taken care of for $5,000.00 to $10,000.00 to "pay off" some people. Mr. Leath relayed this information to his father and together they went to the Tennessee Bureau of Investigation.

On January 16, 1984, Mr. Leath was interviewed by agents of the Tennessee Bureau of Investigation and wired with a body recorder. TBI agents followed Mr. Leath to Murfreesboro and watched as he entered the appellant's office. He stayed for twenty minutes. An audio tape of the conversation between Mr. Leath and the appellant was played for the jury.

On January 18, 1984, Mr. Leath called the appellant from the TBI office and their conversation was taped. This tape was likewise played for the jury. Then on January 20, 1984, Mr. Leath met the appellant at Quincy's Steakhouse in Murfreesboro. In the parking lot of Quincy's, Mr. Leath paid the appellant $6,000.00 with money belonging to the Tennessee Bureau of Investigation. This transaction was memorialized on audio tape utilizing the body recorder and also on videotape by TBI agents secreted in a van on the parking lot. Both tapes were played for the jury. The videotape also had recorded the sound, but the sound was not played for the jury because there was a five second gap on the videotape due to a power interruption. The audio tape contained no gap and it was played for the jury.

Neither the videotape nor any of the audio tapes are included in the record on

appeal. Thus, this Court is not able to review the contents of the tapes, since they were not transcribed as they were played. However, the state reviewed the statements on the tapes with the appellant during his lengthy cross-examination.

██ It is the responsibility of the appellant to have prepared a transcript of such part of the evidence as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. Rule 24(b), T.R.A.P. Thus, the appellant cannot be heard to complain about this Court's lack of access to the tapes in their original form.

In his testimony the appellant admitted his representation of Mr. Leath, but contended that the money given to him was for his fee and for the county's drug fund into which he was encouraging Mr. Leath to make a larger contribution than any previous client had ever made. He denied that he ever discussed bribing anyone or ever intended to do such a thing. He explained each suspicious statement by giving it an innocent cast. According to the appellant, he also intended to work out an arrangement with the District Attorney General and the police officers by which Mr. Leath would provide information concerning drug dealers. This information and the contribution to the drug fund would be given in exchange for dismissal of the pending charges.

The appellant also presented several witnesses as to his good character, Mr. Leath's bad character, and the fact that the case was handled in a routine manner in his law office.

The appellant relies on *Canter v. State,* 75 Tenn. (7 Lea) 349, 351 (1881), for his contention that the gravamen of the offense of obtaining money by false pretense is that the owner of the property must intend to part with his property permanently and not just the mere possession of it. He contends that since the Tennessee Bureau of Investigation intended to give him the money temporarily and then to arrest him on the spot, which they did, there was no obtaining of the money by false pretense.

TCA § 39–3–901(a) defines the offense of "false pretense." TCA § 39–3–901(b) provides:

The words "false pretense" include all cases of pretended buying, borrowing, or hiring, bailment or deposit, and all cases of pretended ownership, where the person obtaining possession intended, at the time he received the property, feloniously to steal the same.

██ This subsection of the statute, when enacted by the General Assembly effectively overruled that aspect of the holding in *Canter.*

██ In *State v. Smith,* 612 S.W.2d 493, 497 (Tenn.Cr.App.1980), this Court enumerated the elements of the offense as follows:

(1) the making, with intent to defraud of a false representation of a past or existing fact;

(2) the representation was calculated to deceive the person to whom it was made and did in fact deceive that person;

(3) the false pretense was capable of defrauding;

(4) the defendant obtained something of value from the injured person without giving just compensation; and

(5) the thing obtained was valued at more than or less than $100.00 (now $200.00) (as for larceny, the value will determine the punishment).

The false pretense must be a statement of *some existing fact* (emphasis in original) and not a mere promise to do something in the future. *Canter v. State,* supra, cited in *State v. Smith,* supra. However, when a false promise is coupled with a false statement of fact, the two are taken together as a fraudulent pretense. *State v. Smith,* supra, citing *Cook v. State,* 170 Tenn. 245, 94 S.W.2d 386, 388 (1936).

In this case the appellant indicated that the money which he sought from Mr. Leath would be given by him to certain unnamed officials in exchange for the dropping of

the charges against him. By any reasonable interpretation, it is obvious that the appellant implied that he had the present ability to bribe public officials in Rutherford County in behalf of his clients.

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

There was ample, indeed overwhelming, evidence from which any rational trier of fact could find the appellant guilty of all of the elements of obtaining personal property under false pretense beyond a reasonable doubt. Rule 13(e), T.R. A.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). These issues have no merit.

In another issue the appellant contends that the trial judge erred by overruling his pretrial motion to dismiss Count 2 of the indictment because it was not endorsed a true bill by the foreman of the grand jury, nor does it contain any identifying designations such as the state, county, court, term, etc.

The second count of the indictment, charging the offense of attempt to commit a felony, is typed on a separate sheet of paper attached to the indictment, is designated *"Count II"* and is signed by the District Attorney General Pro Tem. The caption of the indictment indicates that it was for "obtaining money by false pretense" and "attempt to commit a felony." The entire indictment was endorsed a true bill by the foreman of the Grand Jury.

As this Court noted in *Janow v. State*, 567 S.W.2d 483, 484–485 (Tenn.Cr. App.1978), there is no authority for the proposition that the foreman of the grand jury must endorse each count of a multi-count indictment. When the foreman endorses the entire document as the action of the grand jury in returning a true bill, the endorsement requirement of TCA § 40–13–105 is fulfilled.

Furthermore, in this case the appellant cannot be heard to complain about the second count. He was not convicted of the offense charged in that count of the indictment. This issue has no merit.

In another issue the appellant contends that the trial judge erred by granting the state a continuance, denying him a speedy trial.

The indictment was returned on March 16, 1984. The case was originally set for trial on June 12, 1984. Mr. Leath could not then be found, even though state and federal authorities were searching for him. Therefore, the case was continued until July 26, 1984, at which time the trial began.

In *State v. Bishop*, 493 S.W.2d 81, 84 (Tenn.1973), our Supreme Court adopted the balancing test devised by the United States Supreme Court to determine whether one's right to a speedy trial has been denied. That test, enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), requires courts to weigh four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether there was any prejudice to the accused as a result of the delay.

In *Barker*, the Supreme Court noted that until there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance. 92 S.Ct. at 2192. A delay of four months and ten days is not presumptively prejudicial. Therefore, there is no necessity for this Court to inquire into any of the other factors. There was no error in granting the state a continuance in this case, and this issue has no merit.

In the next issue the appellant contends that the trial judge erred by failing to grant a mistrial during the voir dire when

the District Attorney General stated that the defendant would not testify in this case unless the defendant felt that the state had made out a case. He contends that this was an impermissible comment upon his constitutional right not to testify.

During voir dire the District Attorney General stated:

Would any of you in this case the defendant stands before you innocent today, at this point in time, and it is up to the State to prove the case. The Defendant doesn't even really have to take the stand, if he feels that the State didn't prove his case, and he didn't take the stand, and, and that was his option, or his attorney's suggestion would that create any bias in any of your mind's, or would that bother you, or could you still—

An objection was interposed and at the bench conference which followed the trial judge overruled the motion for a mistrial and then instructed the jury as follows:

Well, I am going to overrule your motion for a mistrial.

Ladies and gentlemen, you are on the Jury service, you will disregard the statement that the District Attorney General made about anybody taking the witness stand.

■ The remarks of the District Attorney General were not prejudicial. There was no implication that any improper inferences should be drawn from the fact that the appellant may not take the stand. Rather, the question was obviously intended to determine whether the jurors would be able to disregard the fact that he did not testify in the event that he chose not to do so. There clearly was no prejudice from this question. Furthermore, the appellant took the stand and testified at length under oath. This issue has no merit.

In another issue the appellant contends that the trial judge erred by allowing the state to introduce the prior testimony of Mr. Leath because this was a denial of his right to confront and cross-examine the witness against him.

Although a continuance was granted for the purpose of finding Mr. Leath, he was never found prior to trial and the state was allowed to place before the jury his sworn testimony at the preliminary hearing.

■ It has long been recognized as an exception to the hearsay rule, that when a witness has become "unavailable" pending the date the case comes on for trial, testimony given under oath by that witness at a prior hearing in the same case is admissible for the purpose of establishing the truth of the matters therein asserted. *In Re: Estate of Rhodes*, 222 Tenn. 394, 436 S.W.2d 429, 433–434 (1968). This principle is equally true in criminal, as well as civil cases. *Somerville v. State*, 483 S.W.2d 757, 759 (Tenn.Cr.App.1972), citing numerous cases beginning with *Kendrick v. State*, 29 Tenn. (10 Humph.) 479, 491 (1850). The U.S. Supreme Court has established two criteria which must be met to satisfy the Confrontation Clause of the Sixth Amendment of the U.S. Constitution prior to admission of such hearsay. First, it must be shown that the declarant whose prior testimony is offered at trial is truly "unavailable" after a good faith effort by the prosecutorial authorities to obtain his presence. Second, once it is shown that he is "unavailable" the evidence must carry its own "indicia of reliability." The availability of an opportunity to cross-examine the witness and the use of that opportunity to do so provide the necessary "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 2539, 2542–2543, 65 L.Ed.2d 597 (1980).

In *State v. Henderson*, 554 S.W.2d 117, 119 (Tenn.1977), a case which antedated *Ohio v. Roberts*, our Supreme Court added a third criterion, i.e., that the evidence must not be "crucial" or "devastating." This additional criterion was again applied in *State v. Armes*, 607 S.W.2d 234, 239 (Tenn.1980), a post-*Ohio v. Roberts* case. More recently, this Court has held that "(W)hen the right of confrontation has been satisfied," the "crucial and devastating" rule is inapplicable. *State v. Mack T. Cole*, Tennessee Criminal Appeals, opinion filed at Nashville, June 12, 1985, permission to appeal denied by Supreme Court, September 3, 1985.

In this case the proof revealed that extensive efforts were made by an investigator from the office of the District Attorney General Pro Tem, and also by the Federal Bureau of Investigation. Investigators detailed their diligent, but unsuccessful, efforts to apprehend Mr. Leath prior to trial. At the preliminary hearing Mr. Leath gave his testimony in open court, under oath, in the presence of the appellant and his counsel. His testimony was subject to cross-examination and he was extensively cross-examined by the very same counsel who represented him at trial. Thus, the witness was shown to be truly unavailable and the prior testimony contained more than adequate indicia of reliability to be considered trustworthy evidence. Both prongs of the *Ohio v. Roberts* test were satisfied. Furthermore, the testimony was neither "crucial" nor "devastating." While it was certainly "important" for the purpose of identifying the voices on the tapes, it was the taped conversations between Mr. Leath and the appellant that were the "crucial" and "devastating" evidence in this case. The trial judge did not err by admitting this evidence. This issue has no merit.

The appellant also contends that the trial judge erred by allowing a TBI agent to testify concerning a waiver of the attorney-client privilege document executed by Mr. Leath, because the state failed to furnish a copy of the document to defense counsel in response to a timely motion for discovery.

Rule 16(a)(1)(C), T.R.Cr.P., provides that upon the request of the defendant the state shall permit the defendant to inspect and copy any documents which are within the possession, custody or control of the state, and which are either material to the preparation of his defense or intended for use as evidence in chief at trial or were obtained from or belonged to the defendant.

This document meets none of the criteria of the rule. It was not intended for introduction at trial and was not material to the preparation of the defense. Furthermore, the document neither belonged to nor was obtained from the appellant. The attorney-client privilege belongs to the client. 97 CJS (Witnesses) § 303, p. 844. The document waiving that privilege for the purpose of allowing the Tennessee Bureau of Investigation to record the client's conversations with his counsel in no way affected the counsel. It was the evidence gathered as a result of the waiver, i.e., the tape recording and the videotape, to which the appellant and his counsel had access, which were material to the preparation of the defense, not the waiver document itself. This issue has no merit.

In the next issue the appellant contends that the trial judge erred by allowing the jury to have a transcript of the tapes and to read from the transcripts, since they were not certified documents but were prepared by the TBI. According to the appellant, their use was erroneous because the state did not attempt to introduce the preparer of the transcripts so that his or her credentials might be presented to the court or jury.

William C. Holt was the TBI agent who supervised the recordings of the conversations. Mr. Holt testified that he personally prepared the transcripts of the conversations and that they were accurate. Mr. Holt was subject to cross-examination concerning their accuracy and any alleged discrepancies were subject to exploration during the cross-examination. In fact, defense counsel cross-examined Mr. Holt about some alleged discrepancies.

Tape recorded *and compared transcripts* are admissible and may be presented in evidence by any witness who was present during the recording or who monitored the conversations if he was so situated that he was in a position to identify the declarant with certainty if his testimony comports with other rules of evidence. (emphasis added) *State v. Jones,* 598 S.W.2d 209, 223 (Tenn.1980). That is precisely what was presented in this case and this issue has no merit.

In the next issue the appellant contends that the trial judge erred by failing to conduct an *in camera* examination of the TBI agent's file to look for possible statements made by Mr. Leath which would be discoverable under Rule 16, T.R.Cr.P.

■ While this issue is set forth under the heading "issues presented" in the appellant's brief, there are no citations to the transcript, no arguments and no citations of authority upon this issue. Thus, this issue was waived. Rule 27(a)(7), T.R.A.P.; *State v. Lunati*, 665 S.W.2d 739, 749 (Tenn. Cr.App.1983).

In the next issue the appellant contends that the trial judge erred by failing to correct his charge concerning the burden of proof and reasonable doubt.

■ The record in this case does not contain the jury charge, only discussions about the charge. In the absence of the entire charge, an appellate court would be attempting to judge a single instruction in artificial isolation rather than in the context of the overall charge. *State v. Bolin*, 678 S.W.2d 40, 43 (Tenn.1984). Thus, in the absence of the entire charge, this Court must presume that the jury was correctly instructed.

In the final issue the appellant contends that he should be given a new trial because Mr. Leath has now been captured and is available to testify.

This issue was brought to the court's attention in an amendment to the motion for a new trial. This issue was explicitly rejected by the trial court in the order denying the motion for a new trial. The hearing on the motion for a new trial is not contained in the record, nor are there any affidavits or other proof to support the allegations that Mr. Leath's testimony would now be favorable to the appellant.

■ The decision to grant or deny a new trial on the basis of "newly discovered" evidence rests within the sound discretion of the trial court. *Jones v. State*, 519 S.W.2d 398, 400 (Tenn.Cr.App.1974). A new trial will not be granted on the basis of newly discovered evidence when it appears that the evidence would have no other effect than to discredit the testimony of a witness at the trial, contradict the witness' statements or impeach a witness. In order to justify the granting of a new trial on the basis of newly discovered evidence, it must be shown that the testimony of the witness

sought to be impeached was so important to the issue and the impeaching evidence was so strong and convincing that a different result at trial must necessarily follow. *Gentry v. State*, 184 Tenn. 299, 198 S.W.2d 643, 648–649 (1947).

■ In this case the appellant has not suggested how the live testimony of Mr. Leath would be favorable to him or how it would be so strong and convincing that a different result at trial must necessarily follow. In this case the jurors heard the testimony of Mr. Leath at the preliminary hearing, heard the actual conversations between Mr. Leath and the appellant and saw the transaction on videotape. A new trial with Mr. Leath present could in no way impeach the proof which the jury saw and heard in this case. This issue has no merit.

Finding all of the issues either without merit or waived, the judgment is affirmed.

DUNCAN and DAUGHTREY, JJ., concur.