IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2007 Session

## STATE OF TENNESSEE v. TOMMY BROWN, JR.

**Direct Appeal from the Circuit Court for Obion County**
**No. C06-202     William B. Acree, Jr., Judge**

———————————

**No. W2006-02529-CCA-R3-CD  - Filed January 11, 2008**

———————————

The defendant, Tommy Brown, Jr., was indicted on one count of aggravated rape with a weapon, a Class A felony, and one count of especially aggravated kidnapping, also a Class A felony.  The alleged victim in the case failed to appear on two separate dates for trial.  The state was unable to proceed and the trial court dismissed the case.  On appeal, the state argues that the trial court erred by failing to declare the witness unavailable and admitting the victim's prior preliminary hearing testimony at trial.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and J. Curwood Witt, Jr., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon and Herd Critchlow, Assistant District Attorneys General, for the appellant, State of Tennessee.

Joseph P. Atnip, District Public Defender, and Colin Johnson and William Randolph, Assistant Public Defenders, Dresden, Tennessee, for the appellee, Tommy Brown, Jr.

### OPINION

### I.  BACKGROUND

The alleged victim, David Clark, testified at a preliminary hearing that he was  attacked at knife-point and raped by the defendant on May 7, 2006.  Clark stated that at 3:00 a.m. on the morning of the attack, he was waiting on his girlfriend to return to their apartment.  He was outside the apartment smoking a cigarette when he saw the defendant across the parking lot in a red car.  Clark recounted that he knew the defendant as an acquaintance through a mutual friend for approximately a year prior to the attack.  The defendant came over approximately fifteen minutes later and the two sat outside on the porch and talked.

Clark testified that the defendant asked him if he would go with him so that the defendant could get him a birthday present. Clark refused the defendant's repeated requests to go with him. Eventually, Clark went inside the apartment and laid down. A short time later, at around 4:00 a.m., Clark allowed the defendant into the apartment to use the bathroom and stood outside the bathroom in the hallway while the defendant was inside.

Clark testified that the defendant told him to "come here" and told him he was done using the bathroom. Clark walked into the bathroom and the defendant shut and locked the door behind him. The defendant pulled a knife from his waistband and told Clark to sit down on the toilet and pull down his pants. The defendant started "rubbing on [him] and stuff" while he held the knife to Clark's throat and told Clark that if he did not do what he said, he would hurt him. The defendant performed oral sex on Clark, which Clark resisted, telling the defendant, "No, no. Get off me."

Clark testified that after the defendant stopped, he forced Clark to go out with him. The defendant took the knife he was holding at Clark's throat and put it under his shirt. The two men walked outside the apartment and toward the defendant's car. According to Clark, the defendant had his left arm around Clark's left arm and he had his right hand with the knife up under Clark's shirt. The defendant told Clark, "You're going to get in on my side, and I'm going to sit on top of you where you can't get away from me."

Clark testified that when the defendant took his hand off of his left arm to open the car door, Clark spun around, hit him and pushed him to the ground. Clark took off running and spotted a woman pulling into the apartment complex. He flagged her down and told her the defendant was trying to hurt him. She told him she would follow him back to his apartment, and Clark called the police. When he got back inside the apartment, he looked in the mirror and saw that he had been cut on the left side by his ribs. The cut was not deep but sliced the skin.

After a brief cross-examination, the defendant's case was bound over to the grand jury. The grand jury returned indictments on charges of aggravated rape and aggravated kidnapping against the defendant. The defendant waived his right to a jury trial and a bench trial date was set for August 29, 2006. On August 1, 2006, the state informed the court that it had issued a subpoena to compel Clark's attendance at trial. Clark did not appear for trial on August 29. The state informed the court that a subpoena was served on the defendant, but two weeks prior to trial Clark moved to the state of Missouri to live with his mother. The state requested a continuance which the court granted until September 8, 2006.

The record reflects that on September 8, the court held a hearing to address David Clark's absence at trial on August 29. Prosecutors informed the court that they had spoken with Clark's mother who told them that her son was enrolled in school in Missouri and was undergoing counseling. The prosecutors indicated that Clark's mother requested that trial be postponed until November so that Clark could continue counseling. Prosecutors also indicated that Clark's mother assured them that he wished to prosecute and she promised that he would appear for trial at that time.

The defendant requested a dismissal from the court, but it was denied. The trial court set the matter for trial on October 30, 2006, but stated on the record that if Clark did not appear for trial, the case would be dismissed. After the court informed prosecutors that it would dismiss the case if the witness failed to appear, the prosecution responded by saying, "If it please the Court, we will also go through the Interstate Act to make sure that he is properly served in the state of Missouri. But we'll - we will dismiss if he's not here on October 30."

The record also reflects that the case was reset for trial on October 30, 2006, and David Clark failed to appear for trial at that setting. Again, the defendant moved for dismissal based on Clark's failure to appear for trial. Prosecutors asked to place the original subpoena of the witness into evidence as an exhibit, and attempted to call the victim-witness coordinator to the stand to testify regarding attempts made by the state to secure the witness for trial. The court intervened before the victim-witness coordinator could testify and asked the state what it planned to do in light of the witness's continued absence. Prosecutors argued that pursuant to Rule 804(a)(5) of the Tennessee Rules of Evidence, they were entitled to have Clark declared unavailable for failure to secure the declarant's attendance by process. After having the court declare Clark unavailable pursuant to the rule, prosecutors further argued that under Rule 804(b)(1), they would then be permitted to offer Clark's prior testimony at the preliminary hearing into evidence at trial.

The defendant argued that prosecutors previously informed the court at the September 8 hearing that they would dismiss the case if the witness failed to appear at the October 30 trial setting, and therefore the defendant was entitled to a dismissal of the case. The court refused to declare Clark unavailable, and likewise refused to permit his prior testimony into evidence. In ruling on the prosecution's motion, the court stated, "I'm not prepared to accept the testimony of someone who doesn't bother to show up on two occasions, and who testified in some other court, and me not be able to see the witness, the victim, and judge his demeanor . . . and make some determination as to whether or not the victim is telling the truth." Based on prosecutors' inability to proceed, the trial court granted the defendant's motion for dismissal.

## II. ANALYSIS

The state argues on appeal that the trial court erred by holding that the victim was not unavailable pursuant to the Tennessee Rules of Evidence, and that the victim's prior testimony at the preliminary hearing was therefore not admissible at trial.

Tennessee Rule of Evidence 804 allows for hearsay testimony of a declarant who is unavailable at trial if the testimony:

> [was] given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

3

Tenn. R. Evid. 804(b)(1). Before such testimony will be admitted, however, the proponent must establish that the witness "[i]s absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process." Tenn. R. Evid. 804(a)(5). Further, in cases such as the one at bar it must be shown that the declarant is truly unavailable after good faith efforts to obtain his presence. *See Barber v. Page*, 390 U.S. 719, 724-725 (1968); *see also State v. Arnold*, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986) (citations omitted). The United States Supreme Court, stated that "good faith" is defined as "[t]he lengths to which the prosecution must go to produce a witness . . . [and] is a question of reasonableness." *Ohio v. Roberts,* 448 U.S. 56, 74 (1980) *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate." *Id*. at 74-75. We will uphold the trial court's determination that a witness is available or unavailable absent an abuse of discretion. *See Hicks v. State,* 490 S.W.2d 174, 179 (Tenn. Crim. App. 1972).

Furthermore, the party issuing the subpoena has the duty to supervise and ensure that effective service of process is completed. "A party desiring the issuance of process to secure the attendance of a witness has the continuing duty to follow up and supervise the service of the subpoena." *State v. Jefferson,* 529 S.W.2d 674, 688 (Tenn. 1975)*, overruled on other grounds by State v. Mitchell,* 593 S.W.2d 280 (Tenn. 1980); *see also Barber*, 390 U.S. at 724. "The prosecuting attorney's statement to the Court concerning the efforts of the [s]tate's investigator to locate the witness cannot be considered as evidence of proof on the issue of the State's good faith effort." *State v. Armes*, 607 S.W.2d 234, 237 (Tenn. 1980). Proof of use of process to procure the attendance of an unavailable witness is required under the Rules of Evidence. Tenn. R. Evid. 804(a)(5). In order to secure the attendance of an out-of-state witness for a trial or hearing, Tennessee enacted the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (Uniform Law). Tenn. Code Ann. §§ 40-17-201 *et seq*. These statutes include provisions for compulsory attendance of out-of-state witnesses at criminal proceedings in Tennessee courts. *Id*.

Upon review of the record, it is apparent that the trial court found that the prosecution failed to make a good faith effort to secure the witness's presence at trial. *Barber*, 390 U.S. at 724-725; *see also Arnold*, 719 S.W.2d at 548. The record reflects that prosecutors informed the court that they had initially subpoenaed David Clark within the state prior to trial. It appears that Clark left the state despite his awareness that his testimony was required at trial. Subsequently, the prosecutor located him in a neighboring state. At the September 8 hearing, the prosecution informed the court that it would "go through the Interstate Act to make sure that he is properly served in the state of Missouri." Thereafter, prosecutors failed to direct a subpoena to the witness through the Uniform Law and instead relied on the verbal assurance of Clark's mother that he would attend the trial. *See* Tenn. Code Ann. §§ 40-17-201 *et seq*.

4

The record also reflects that prosecutors knew Clark's whereabouts, spoke with his mother, and relied upon assurances made by her that he would appear at trial. In order to have a witness declared unavailable, the state had a duty to show proof of process and demonstrate to the court that it was unable to procure the attendance of an unavailable witness under the Rules of Evidence. Tenn. R. Evid. 804(a)(5). Because the prosecution knew where Clark was located and could communicate with him, albeit indirectly, we conclude that the trial court did not abuse its discretion in holding that Clark was not truly unavailable pursuant to Rule 804(a)(5). *Id.* Furthermore, the prosecution concedes that it did not issue an out-of-state subpoena to Clark in Missouri. Prosecutors had a duty to issue that subpoena after assuring the court that it would do so and had a duty to ensure that it was properly served and executed. *Jefferson*, 529 S.W.2d at 688. The prosecution's assurances to the court are insufficient, and it may not rely upon statements to the court as evidence of proof of their good faith effort. *Armes*, 607 S.W.2d at 237; *see also State v. Hamilton*, No. M2001-02748-CCA-R3-CD, 2002 WL 31730877 at *3 (Tenn. Crim. App., at Nashville, Dec. 5, 2002), *perm. app. denied* (Mar. 10, 2003).

Accordingly, the trial court did not abuse its discretion by finding that the state failed to make a good faith effort to secure David Clark's attendance at trial. *See Roberts,* 448 U.S. at 74-75; *see also Hicks* 490 S.W.2d at 179. Because the trial court did not err in holding that Clark could not be declared unavailable, it likewise did not err in denying the admission of his prior testimony at the preliminary hearing at trial, or in granting the defendant's motion for dismissal. Therefore, the state is without relief.

**CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE

5