IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## State of Tennesseee v. Kenneth R. Shell.

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 5323     Lillie Ann Sells, Judge**

_____

**No. E1999-02422-CCA-R3-CD**
**September 1, 2000**
_____

Kenneth R. Shell appeals from his conviction of aggravated sexual battery.  He seeks a new trial based upon newly discovered evidence.  Finding no error in the trial court's denial of his motion for new trial on this basis, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA McGEE OGLE, JJ., joined.

David Neal Brady, District Public Defender, Joe L. Finley, Jr., Assistant District Public Defender, for the appellant, Kenneth R. Shell.

Paul G. Summers, Attorney General & Reporter, R. Stephen Jobe, Assistant Attorney General, William Edward Gibson, District Attorney General, Anthony Craighead and Tammy Hobby, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Kenneth R. Shell, appeals from his conviction of aggravated sexual battery for the fondling of his step-daughter, eight-year-old A.H.[1]  In this direct appeal, Shell claims that he is entitled to a new trial based upon newly discovered evidence of his wife's infidelity and her untruthfulness with the authorities regarding alleged assaults perpetrated against her by her boyfriend.  Shell claims that had this evidence of his wife's motive to "get rid of him" and her poor credibility been known at the time of trial, the result of his trial likely would have been different. Finding no abuse of discretion in the trial court's denial of Shell's motion for new trial, we affirm.

The following facts are relevant to this appeal.  At trial, A.H. testified that on the evening of September 6, 1998, she was asleep in bed with her sister, C.S.  The defendant, her step-

---

[1]It is the policy of this court to identify minor victims of sex crimes by initials only.

father, came into the bedroom wearing a towel and sat on the side of the bed. The defendant inserted his finger into her "privates." A.H. asked the defendant what he was doing, and he did not respond. The victim's mother, Carol Shell, turned on the hallway light, and the defendant jumped under the bed. A.H. testified that she woke up when her mother turned on the lights. Carol Shell came into the girls' bedroom and told A.H. and C.S. to go to her bed. Later that evening, Carol Shell asked A.H. why the defendant had been in the girls' bedroom, and A.H. pointed to her "privates." A.H. talked to an investigator with the sheriff's department the next day.

Carol Shell testified that she and her husband, the defendant, were in bed together on September 6, 1998. They argued, and the defendant left to go sleep on the couch. The defendant went to the living room for about ten minutes, and then Mrs. Shell heard him go into the girls' bedroom. She heard A.H. ask the defendant what he was doing, and she decided to get up to investigate. She turned on the hallway light and the girls' bedroom light. A.H. was sitting up awake. Mrs. Shell did not see the defendant, so she called out for him. She got no response, but she saw him under the bed. Mrs. Shell asked the defendant what he was doing under the bed. He said nothing at first, and then he said that she had scared him. When the defendant emerged from underneath the bed, Mrs. Shell observed that he was nude, had an erection, and had a towel in his hand. Mrs. Shell asked A.H. if the defendant had come into the girls' bedroom to cover them up, and A.H. shook her head no and pointed at her "privates."

Investigator Hazel Hubbard of the Cumberland County Sheriff's Department was notified of the incident on September 7 and met with A.H. on September 9. Investigator Hubbard testified that A.H.'s account on September 9 of the incident was consistent with her testimony at trial. Hubbard attempted to locate the defendant on September 7, but she was unable to make contact with him for over 30 days. Eventually, on October 20, 1998, she interviewed the defendant. He said he could not tell her what happened on September 6 because he was too drunk to remember. The defendant told Hubbard he did not know whether he had done anything to the victim. The defendant signed a statement that said he sometimes had blackouts when drinking and would not remember things for a day or two.

To counter the state's proof, the defendant testified in his own behalf. He said he drank a case or more of beer on September 6 and did not remember any of the events alleged by the victim. He said he loved the victim, and he knew of no reason why he would molest her. He acknowledged that he told Investigator Hubbard that he was unable to say whether he did or did not do it. He demonstrated his fingernails to the jury and said that he generally did not cut them for six to eight weeks.[2] The defendant claimed that by mere coincidence, he left town on September 7, the day the incident was reported to the sheriff's department, and went to Florida. He claimed he left town without first talking to his wife, his probation officer or his boss because he wanted a change of scenery and a new line of work.

---

[2]Apparently, he theorized that had he molested the victim, his long fingernails would have caused noticeable physical injury.

After hearing all of the evidence, the jury found the defendant not guilty of the charged offense of rape of a child. However, the jury found the defendant guilty of the lesser-included offense of aggravated sexual battery.

At the hearing on the motion for new trial, the defendant alleged that newly discovered evidence mandated that he receive a new trial. Defense counsel submitted an affidavit in which he claimed that after the trial he discovered that the defendant's wife was not "a loyal wife torn between supporting her husband or her daughter" as he had believed at the time of trial. Rather, she was having an affair and had been untruthful either with law enforcement officers or in sworn testimony about alleged abuse perpetrated on her by her boyfriend. Mrs. Shell testified at the motion hearing that she did not meet her boyfriend until over two months after the defendant's crime. She admitted that her boyfriend had been charged with two counts of assault against her, but those charges were dismissed. The defense examined Mrs. Shell extensively about whether she lied in her report to police officers or in court[3] about the alleged assaults. Although it appears from her testimony at the hearing that she was confused at times, we gather that she did not recall whether she had been truthful in her allegations regarding one of the alleged assaults because she had been drinking. With respect to the other alleged assault, she testified that the situation had been one of mutual combat. Thus, we surmise from her testimony that she denied being untruthful to the officers or the court regarding the alleged assaults.

Mrs. Shell also denied in her testimony at the motion hearing that she and the defendant had stayed together overnight since the defendant's crime. To contradict this claim, the defense offered the testimony of the defendant's aunt and mother that the defendant and Mrs. Shell lived with their children in the defendant's aunt's home for several months between the defendant's return from Florida and the trial.

The trial court denied the motion for new trial.

Against this factual backdrop, the defendant appeals, raising as his sole complaint the denial of the motion for new trial.

Tennessee law provides that it is within the trial court's discretion to grant a new trial on the basis of newly discovered evidence. State v. Goswick, 656 S.W.2d 355, 358 (Tenn. 1983); see also State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994). The defendant must demonstrate reasonable diligence, materiality and likelihood of a different result if the evidence is produced and accepted by the jury. Goswick, 656 S.W.2d at 358-59. On appellate review, we will disturb the trial court's ruling on a motion for new trial based upon newly discovered evidence only if the lower court abused its discretion. State v. Meade, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996).

---

[3]Mrs. Shell testified in that matter that she had given testimony at another hearing regarding one of the incidents. It appears that this testimony was taken at a preliminary hearing on one of the charges against her boyfriend.

In the present case, the trial court found at the hearing on the motion for new trial that both the victim's and Mrs. Shell's testimony at trial had been very credible. Further, the court noted that Investigator Hubbard affirmed that the victim's testimony was consistent with the statement that the child gave only days after the crime. The court further found that Mrs. Shell had no motive in September 1997, when the incident was first reported, to "get rid of" the defendant so that she could carry on her extramarital activities. Mrs. Shell did not meet her boyfriend until over two months after the initial report of the crime. The court also noted that Mrs. Shell's equivocation regarding the alleged domestic abuse by her boyfriend was typical of that type of situation and did not speak negatively of her credibility regarding the crime on trial.

In evaluating the Goswick factors, we note that a showing of diligence requires evidence that neither the defendant nor his counsel had knowledge of the alleged facts prior to trial. See Jones v. State, 2 Tenn. Crim. App. 160, 165, 452 S.W.2d 365, 367 (1970). In this regard, we believe that defense counsel's affidavit is insufficient to establish what the defendant himself knew about his wife's alleged boyfriend and her reports of domestic abuse by him.[4]

Further, we fail to see the materiality of the evidence. The evidence is not relevant to the crime itself. Its materiality, if any, relates to the credibility of Mrs. Shell as a prosecution witness. As the trial court aptly noted, Mrs. Shell was not involved in an affair with her boyfriend until months after the crime was reported to the authorities. The testimony given by the victim at trial, which Mrs. Shell's testimony corroborated, was consistent with that received during the initial investigation of the crime. Further, we do not see how Mrs. Shell's conduct as a victim-witness in cases involving alleged domestic abuse is material to the case at bar.

Turning to the third Goswick factor, we are not convinced of the likelihood of a different result had this evidence been produced and accepted by the jury. As discussed above, the evidence was not material. Further, the evidence of the defendant's actions spoke loudly of his guilt. The defendant dove under the victim's bed to hide from his wife when he was caught in the victim's bedroom. The defendant did not deny this action; he testified that he could not remember whether he did it. He fled the jurisdiction the day after the crime, and at trial he offered a dubious excuse that his leaving town was merely coincidental. Given the trial court's evaluation of the strong credibility of the victim's and Mrs. Shell's testimony, as contrasted with the other evidence of the defendant's guilty actions, we see no likelihood of a different result had Mrs. Shell's credibility been attacked with the "newly discovered evidence."

In addition to our Goswick analysis, we note the following principle of Tennessee law.

A new trial will not be granted on the basis of newly discovered evidence when it appears that the evidence would have no other effect than to discredit the testimony

---

[4]According to the warrants issued in the alleged domestic strife between Mrs. Shell and her boyfriend, only one of the alleged incidents occurred prior to the defendant's trial. The other occurred two days afterwards.

of a witness at the trial, contradict the witness' statements or impeach a witness. In order to justify the granting of a new trial on the basis of newly discovered evidence, it must be shown that the testimony of the witness sought to be impeached was so important to the issue and the impeaching evidence was so strong and convincing that a different result at trial must necessarily follow.

State v. Arnold, 719 S.W.2d 543, 550 (Tenn. Crim. App. 1986) (citing Gentry v. State, 184 Tenn. 299, 311, 198 S.W.2d 643, 648-49 (1947)); see State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (newly discovered impeachment evidence is a proper basis for a new trial only where it is so crucial to the question of guilt or innocence that its admission would likely result in an acquittal). The evidence the defendant offered at the hearing on the motion for new trial was entirely impeachment evidence. As discussed above, it was not of such a character that its relevance was great or its strength was such that the outcome of the trial is in serious question. Under Arnold, the new evidence in this case was not a sufficient basis for the grant of a new trial.

In sum, we see no abuse of discretion in the trial court's denial of the motion for new trial. The judgment of the trial court is therefore affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE