IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. MICHAEL JAMES GRUBB

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S48, 131     Phyllis H. Miller, Judge**

_____

**No. E2005-01555-CCA-R3-CD - Filed April 18, 2006**

_____

This is a direct appeal as of right from a conviction on a jury verdict for aggravated robbery. The Defendant was sentenced as a Range I, standard offender to twelve years in the Department of Correction. On appeal, the Defendant raises four issues: (1) the trial court erred in overruling his motion to suppress evidence obtained during a search of his car, (2) the trial court erred in allowing into evidence the preliminary hearing testimony of a police officer who was deceased at the time of trial, (3) the evidence was insufficient to find him guilty of aggravated robbery, and (4) his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

David W. Tipton, Bristol, Tennessee, for the appellant, Michael James Grubb.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Greeley Wells, District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The conviction and sentence at issue in this appeal stems from the May 11, 2003 armed robbery of a health food store in Bristol, Tennessee. The Defendant, Michael James Grubb, was the get-away driver for a two-man team that first cased and then robbed the small business and fled across the state line to Bristol, Virginia, where the Defendant was eventually arrested. In October of 2003, a Sullivan County grand jury indicted the Defendant on one count of aggravated robbery. See Tenn. Code Ann. § 39-13-402.

The evidence in the record before us shows that on the afternoon of May 11, 2003, Ms. Jennifer Leagan,[1] the owner of Bristol Health Food Store, and an employee, Ms. Clennie Bowers, were working in the store. According to Ms. Leagan, "a man came in the store with a ski mask on, a gun in his hand and coming towards us said 'I want your money now.'" Ms. Leagan took out the cash register drawer and turned it over to the robber. The robber demanded that Ms. Bowers go to the back of the store, and she complied. While in the back, Ms. Bowers dialed 911 and reported the robbery. The robber left with $259.

Ms. Leagan testified that the man who robbed her was black, "six feet or five feet eleven inches," and had a "medium build." The robber was wearing a dark colored T-shirt, brown gloves and a black ski-mask. The gun used was described as black and not a revolver but the kind "with a clip." Several days after the robbery, Ms. Leagan was watching T.V. when she saw a news report of a white man that had been apprehended as a suspect in a recent robbery. Ms. Leagan recognized the man, which turned out to be the Defendant, and phoned the police to inform them that this man had been in her store about two hours before the robbery. She remembered him because of a T-shirt he was wearing which stated "real men don't need directions."

At approximately the same time the robber was fleeing the scene, Ms. Clennie Bowers' daughter, Ms. Heather Bowers, drove into the health store parking lot. Ms. Heather Bowers testified that as she entered the parking lot, she observed a car leaving in which the passenger, a black male, was leaned over on top of the driver, a white male. She further stated that she saw the two men leave in a Chevrolet Celebrity "between '84 and '86, gray."[2] At the motion to suppress, Ms. Heather Bowers described the driver as having gray, shoulder-length hair. At the trial, she admitted she was not sure of the hair, and stated that her initial report to the police regarding the driver of the car was simply that he was a white male.

Officers Craig Beyer and James Almany of the Bristol, Tennessee Police Department received an "official bulletin from our central dispatch that there had been an armed robbery." Officer Almany testified that the "suspect vehicle was blue or gray in color, Chevy Celebrity, with a white male and a black male." Officer Beyer testified that he was looking for a gray Chevrolet Celebrity with a white male driver and a black male passenger, and shortly thereafter observed and began to follow a "faded blue Celebrity."[3] As Officer Beyer followed the vehicle, he radioed central dispatch to run the tag number. Before the results came back, the suspect had driven across the state line into Virginia, and the Bristol, Virginia Police Department was contacted. Officer Almany joined Officer Beyer, and both officers followed the suspect vehicle into Virginia.

---

[1]The alternative spelling "Leegan" is also used in the record.

[2]Ms. Heather Bowers testified that she was able to give a description of the year, make and model of the get-away vehicle because she worked at a used car lot.

[3]Officer Beyer's testimony originated at a preliminary hearing and was admitted into the record at both the suppression hearing and the trial.

Both Officer Beyer and Officer Almany testified that when they first began to follow the suspect vehicle, only one occupant, a white male driver, could be seen. However, at some point both officers observed a black male rise from the passenger seat of the vehicle. Officer Almany testified that it was at this point, and not prior, that the officers activated their blue lights. Both officers testified that at one point in the pursuit, the Defendant's car slowed, the passenger exited and ran off, and the Defendant then drove on. Officer Beyer continued to follow the Defendant, who was eventually stopped by Bristol, Virginia police. Officer Beyer testified that the car he had pursued was registered to the Defendant. Officer Almany broke off his pursuit of the Defendant in an attempt to apprehend the suspect who fled on foot. Officer Almany, who had a K-9 unit with him, gave a warning and then released the police dog. This suspect, a black male who had been riding as a passenger in the car, was not apprehended.

Officer Steve Crawford of the Bristol, Virginia Police Department was notified the day of the robbery that Bristol, Tennessee Police were in pursuit of a vehicle that had crossed into Virginia. Officer Crawford soon observed the Chevrolet pursued by what he recognized as an unmarked Bristol, Tennessee Police Department vehicle. Officer Crawford joined the pursuit and witnessed the Defendant run two stop signs and speed through a residential area. The Defendant was subsequently stopped by the Bristol, Virginia Police. The Defendant was arrested for felony eluding police but was later turned over to Tennessee law enforcement officers. Officer Crawford identified the Defendant as the driver of the car he pursued, and described the Defendant's car as "faded gray." He also noted that he saw a shopping bag on the front seat of the Defendant's car.

Detective Johnny Hale of the Bristol, Tennessee Police Department testified that he inventoried the Defendant's vehicle after it was towed back to Tennessee and recovered a black semi-automatic style pistol and a pair of brown gloves, which were found in a white plastic bag on the front seat. The handgun turned out to be a BB or pellet gun. A black ski-mask was recovered from under the front seat. As to the color of the vehicle, Det. Hale stated it "depends on what area of the car you look at. Potentially blue, but it has what would appear to be gray," and on another occasion he further testified that the car appeared either gray or blue depending on the angle at which it was viewed.

Detective Hale also testified that when he first met with the Defendant, the Defendant was advised of his rights, elected to sign a waiver, and agreed to talk with the detective. The Defendant initially claimed he did not know anything about the robbery, never had a black male in his car that day, and had not loaned his car to anyone else in the past ten days. The Defendant stated he did not know how the items recovered from his vehicle had made their way into his car. Detective Hale also noted when the Defendant was arrested and interviewed he was wearing a T-shirt upon which was printed "Real men don't ask for instructions."

The Defendant filed a motion to suppress the evidence recovered from his vehicle in March of 2004. Over the course of two days in December 2004, an evidentiary hearing was conducted on the Defendant's motion, at the conclusion of which the trial court denied the motion to suppress. Several days later the Defendant received a jury trial and was ultimately found guilty of aggravated

robbery. After a sentencing hearing, the Defendant was sentenced as a Range I, standard offender to twelve years in the Department of Correction. The Defendant timely filed a motion for a new trial, which was denied, and this appeal followed.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in denying his motion to suppress evidence and in allowing into evidence the preliminary hearing testimony of a police officer who was not available to testify at trial. The Defendant also asserts that there was insufficient evidence to support his conviction and that his sentence was improperly enhanced and therefore excessive.

## I. Motion to Suppress

In his first issue, the Defendant claims he was subjected to an unlawful search in violation of his rights under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. To support this claim the Defendant argues that the police did not have reasonable suspicion to stop his vehicle and conduct a warrantless search because the police were instructed to look for a gray car with two occupants but instead pursued the Defendant's blue car when it appeared to have only one occupant. Thus, the Defendant asserts, the facts did not support a reasonable suspicion for stopping the Defendant's vehicle and the resulting search was illegal. Accordingly, the Defendant claims the trial court erred in denying his motion to suppress the evidence recovered from his vehicle.

### A. Suppression review standard

When reviewing the correctness of a trial court's grant or denial of a pretrial motion to suppress, an appellate court must uphold the trial court's findings of fact "unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996). This standard recognizes that the credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters "entrusted to the trial judge as the trier of fact." Id. Moreover, it is settled law that the party prevailing at the trial court is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence, see State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001), and the defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court, see Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

However, this Court is not bound by the trial court's conclusions of law. See State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts as found by the trial court is a question of law which an appellate court reviews de novo. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Because the facts presented at the suppression hearing in this case are undisputed, only questions of law are before this Court. Therefore, our review of the record before us is purely de novo. See State v. Gonzalez, 52, S.W.3d 90, 94 (Tenn. Crim. App. 2000).

B.  Search and seizure law

Both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable searches and seizures."[4]  The intent and purpose behind these constitutionally protected rights is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials."  Camara v. Municipal Court, 387 U.S. 523, 528 (1967).[5]  As a general rule, warrantless searches or seizures are presumed unreasonable, and any evidence discovered thereby is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to a narrowly defined exception to the warrant requirement.  See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003).

In this case, it is not contested that the Defendant was seized and his car was searched pursuant to an investigatory stop.[6]  Therefore, the primary issue before this Court is whether this warrantless seizure and subsequent search was constitutionally "unreasonable."  While a warrant is normally required when a government official intrudes upon the privacy of a citizen, there are several narrowly defined exceptions to this warrant requirement.  One such recognized exception exists when the police make a brief investigatory stop.  See Terry, 392 U.S. at 21; Garcia, 123 S.W.3d at 343.  In order for such a warrantless seizure to be deemed reasonable, the Unites States Supreme Court has held that the detention must have been based on "reasonable" suspicion, supported by "specific and articulable facts" that a criminal offense has been committed or is about to be committed.  Terry, 392 U.S. 1 at 20-21.  See also State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997).

---

[4]The Fourth Amendment to the United States Constitution provides as follows:

> Unreasonable searches and seizures.  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, Section 7 of the Tennessee Constitution guarantees that:

> the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

[5]The intent and purpose of the prohibitions against unreasonable searches and seizures found in the Tennessee Constitution has been found to be the same as that behind the provision found in the Fourth Amendment to the United States Constitution.  See State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

[6]Our courts have recognized three types of police-citizen interactions: (1) a full scale stop and arrest, which must be supported by probable cause, see Whren v. United States, 517 U.S. 806, 809-10 (1996); (2) a brief investigatory stop, which must be based on reasonable suspicion supported by specific and articulable facts, see Terry v. Ohio, 392 U.S. 1, 20-23 (1968); and (3) a brief police-citizen encounter, which requires no objective justification, see United States v. Drayton, 536 U.S. 194, 201-02 (2002).  See also Daniel, 12 S.W.3d at 424.

C. Reasonable suspicion analysis

Determining whether reasonable suspicion existed in a particular stop "is a fact-intensive and objective analysis." Garcia, 123 S.W.3d. at 344. The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. United States v. Soklow, 490 U.S. 1, 7 (1989). See also State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998). Furthermore, when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances." State v. Hord, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). This inquiry looks to such factors as the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. See State v. Pulley, 863 S.W.2d 29, 30-31 (Tenn. 1993). The objective facts on which an officer relies can include, but are not limited to, his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and--most crucial in this case--information from informants. See State v Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996).

In this appeal, the Defendant contends that the police "lacked specific articulable facts necessary to create a reasonable suspicion sufficient to justify an investigatory stop" of the Defendant's vehicle. To support this claim, the Defendant argues that because the information provided from the citizen informant described two suspects in a gray Chevrolet Celebrity, the police had no reasonable suspicion to pursue the Defendant's blue Chevrolet Celebrity which they initially believed to contain only one occupant.

As stated above, when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances." Hord, 106 S.W.3d at 71. Based on the totality of the circumstances, we conclude that the officers had ample specific and articulable facts upon which to base a reasonable suspicion that the Defendant was involved, or had recently been involved, in criminal activity. As noted by the trial court, the description of the suspects was communicated to the police within minutes of the robbery, and a car "meeting that description" was observed by officers shortly thereafter "near where the robbery is supposed to have happened." The photos authenticated at trial by multiple witnesses support the police officers' testimony that the Defendant's vehicle could be described as either gray or blue, depending upon the angle from which it is viewed. The trial court found that the car "looks absolutely gray" from the back, but from the "side it's a bluish-gray. It's just, it could be either one." According to the evidence contained in the record, the color, make and model of the suspect's car as reported by the witness constituted specific facts which supported reasonable suspicion to stop the Defendant's vehicle.

Additionally, the evidence reveals that the police did not activate their blue lights, i.e., did not initiate their investigatory stop, until after they observed two occupants in the vehicle. As such, there was no discrepancy between the citizen informant's description of the two suspects and the vehicle in which they fled the scene and the Defendant's vehicle and number of occupants at the time the investigatory stop was initiated. Therefore, the search of the Defendant's vehicle subject to this

investigatory stop was not unlawful within the purview of the Tennessee and United States Constitutional protections against unreasonable searches, and the evidence obtained from this search was properly admitted at trial. This issue is without merit.

## II. Preliminary Hearing Testimony of Officer Beyer

In the Defendant's second issue on appeal, he argues that the trial court erred in allowing into evidence the preliminary hearing testimony of Officer Craig Beyer. The Defendant does not deny that Officer Beyer was deceased at the time of the suppression hearing and trial and therefore not available to testify in person. The Defendant also does not deny that Officer Beyer was indeed cross-examined by Defendant's counsel at the preliminary hearing. Rather, the Defendant argues that his confrontation rights have been violated because the type of cross-examination conducted at a preliminary hearing is different from that conducted at trial and because, according to the Defendant, the Tennessee Constitution provides a greater confrontation right than that demanded under the United States Constitution. The State argues on appeal that the trial court properly admitted the preliminary hearing testimony of Officer Beyer pursuant to Tennessee Rule of Evidence 804, which allows hearsay exceptions for the admission of prior statements of unavailable witnesses,[7] and further argues that the admission of this prior statement did not violate the Defendant's confrontation rights.

Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Officer Beyer's preliminary hearing testimony, when presented at trial, was hearsay. See Tenn. R. Evid. 801(c). However, in limited circumstances, prior testimony may be admissible at trial through a hearsay exception if the declarant is unavailable and if the party against whom the testimony is offered had an opportunity and a similar motive to develop the testimony through other methods such as cross-examination. See Tenn. R. Evid. 804(b)(1).

In addition to the general rule excluding hearsay, criminal defendants are also guaranteed the right to confront witnesses against them. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); Tenn Const. art. I, § 9 ("That in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face . . . ."). Accordingly, in cases such as the one at bar in which the prosecution offered the former testimony of an unavailable witness, the State must also establish two prerequisites in order to satisfy a defendant's constitutional right of confrontation. First, the State must show that the declarant is truly unavailable after good faith efforts to obtain his presence, and second, that the evidence carries its own indicia of reliability.[8] State v. Summers, 159 S.W.3d 586,

---

[7]As noted above, Officer Beyer's testimony at the preliminary hearing implicated the Defendant in the robbery and ensuing police pursuit.

[8]This Court previously noted that "[a]t one time, there was a third requirement, that the evidence not be crucial or devestating." Summers, 159 S.W.3d at 597 n.4. However, our most recent case law has "disposed" of this third

(continued...)

597 (Tenn. Crim. App. 2004). See also State v. Arnold, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986). With respect to the latter requirement, the United States Supreme Court has recently mandated that the reliability of a prior testimonial statement is established exclusively through cross-examination. See Crawford v. Washington, 541 U.S. 36, 54 (2004).

In this case, it is undisputed that the declarant was deceased at the time of the Defendant's suppression hearing and trial, and therefore was unavailable to testify in person. As to the second requirement, our supreme court has previously ruled that the former testimony exception to the hearsay rule is based on such a firm foundation that it meets the indicia of reliability requirement. See State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986). Nonetheless, the Defendant argues that he was denied his confrontation right because (1) Crawford v. Washington requires a prior opportunity to cross-examine the declarant and "the purpose of cross-examination of a witness in a preliminary hearing, where the issue is only one of probable cause, is totally separate than the purpose of cross-examination where the issue is guilt or innocence presented to the ultimate trier of fact," and (2) because "the Language of the Tennessee Constitution . . . grants an even broader right of confrontation." We disagree with both arguments.

The "purpose of a preliminary hearing is . . . to determine whether there exists probable cause to believe that a crime has been committed and that the accused committed the crime." State v. Lee, 693 S.W.2d 361, 363 (Tenn. Crim. App. 1985). The difference in the standard of proof not-withstanding, the basic purpose of the preliminary hearing and the trial are not "totally separate" as the Defendant argues, but rather deal with precisely the same issue: whether or not the accused is guilty of the crimes for which he or she is charged. See State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993) (holding that a preliminary hearing testimony of a declarant could be introduced at trial under the former testimony exception based primarily on a finding that "at both the [preliminary] hearing and the subsequent trial, the testimony was addressed to the same issue of '[w]hether or not the defendant[] had committed the offense' charged."). Accordingly, we conclude that the Defendant in this case had the opportunity to cross-examine Officer Beyer at the preliminary hearing with the same motives that would have guided his cross-examination of the declarant had he been available at trial. See State v. Brian Eric McGowen, No. M2004-00109-CCA-R3-CD, 2005 WL 2008183, at *11 (Tenn. Crim. App., Nashville, Aug. 18, 2005) (holding that the trial court did not err in allowing preliminary hearing testimony to be introduced at trial under the former testimony exception because the motive to cross-examine the defendant was the same at both the preliminary hearing and trial). Thus, Crawford's cross-examination requirement was met in this case.

The Defendant also alleges that the Tennessee Constitution, which guarantees a right to meet witnesses "face to face," grants a broader right to confrontation than the United States Constitution. However, the Defendant fails to cite to any authority to support this proposition. Our supreme court has declared that the same standards and criteria apply to both the United States and Tennessee Constitutions' rights of confrontation. See Causby, 706 S.W.2d at 631. This issue is without merit.

_____

[8](...continued)
requirement. Id.

-8-

### III. Insufficient Evidence

The Defendant also claims that "the verdict of the jury is contrary to the weight of the evidence and therefore must be overturned." To support this assertion, the Defendant argues that the prosecution presented little direct evidence linking him to the robbery, essentially only the testimony of Ms. Heather Bowers. The Defendant notes that this witness could not identify the Defendant as the man she saw fleeing the scene of the crime. Thus, the Defendant concludes, based on the facts contained in the record, "there is no evidence that this Defendant was present at the time of the robbery." Upon careful examination of the arguments contained in the Defendant's appellate brief, we conclude he is asserting that the evidence presented at his trial was insufficient to lead a reasonable juror to conclude beyond a reasonable doubt that he was guilty of the offense of aggravated robbery.[9]

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

---

[9]We note that because of the unusual language used by the Defendant in his appellate brief, this issue could be construed as a claim that the trial court erred in exercising its discretion as a "thirteenth juror" pursuant to Rule 33(f) of the Tennessee Rules of Criminal Procedure. As the State properly pointed out in its appellate brief, a trial court's determination as a "thirteenth juror" is not subject to appellate review. See State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995). However, we have interpreted the Defendant's third issue on appeal to challenge the legal sufficiency of the evidence, which is a cognizable claim for appellate review.

Aggravated robbery is defined in our criminal code as the intentional or knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon or by display of any article used to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). In this case, two men robbed the health food store in the following manner: a white male first cased the store; a black male wearing a dark T-shirt and a black ski-mask then entered the store, brandished a handgun reasonably believed to be a deadly weapon and stole cash from the store register; the victims testified that they were "scared"; the black male ran to a car waiting in the parking lot; and the white male drove this get-away vehicle from the scene of the crime. This evidence is sufficient to establish all of the elements of the crime of aggravated robbery.[10] However, the Defendant does not challenge the fact that the victims were subjected to an aggravated robbery, rather he argues that the State failed to provide sufficient proof of his identity as a perpetrator in the aggravated robbery, specifically referencing the lack of direct evidence presented at trial.

In this case, a witness testified she saw the Defendant's vehicle leave the scene of the crime with a black male passenger and a white male driver who fit the general description of the Defendant. This witness, who works in used car sales, was very specific about the year, make and model of the get-away vehicle and positively identified it as the Defendant's vehicle through photographs submitted at trial.

In addition to this direct evidence, the prosecution presented a very strong case against the Defendant based on significant circumstantial evidence. A victim remembered that the Defendant came into the store, looked around, and then left the store about two hours before she was robbed at gunpoint. The victim specifically remembered the Defendant because of an unusual T-shirt he was wearing at the time which contained writing to the effect of "real men don't ask for directions." The Defendant was wearing this same T-shirt later that same day when he was apprehended by police. The Defendant, who was driving a car matching the description of the vehicle reported to have been used in the robbery, was observed a short time after the robbery in the vicinity near where the crime took place, and when the police activated their blue lights, the Defendant fled. A black male passenger wearing a dark T-shirt was seen exiting the Defendant's car during the police pursuit. The car in which the Defendant was eventually apprehended was registered in his name, and contained a handgun, brown gloves and a black ski-mask matching the description of those used in the aggravated robbery.

It is established law that circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). The circumstantial evidence must be consistent with the guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory except that of guilt. Id. at 900. However, deference clearly lies with the

---

[10]Although not raised on appeal, we note that while the Defendant was never alleged to have himself pointed the handgun at the victims, his clear involvement in the aggravated robbery through first casing the store and then driving the get-away vehicle rendered him subject to conviction for aggravated robbery under the theory of criminal responsibility. See Tenn. Code Ann. § 39-11-402; State v. Lemacks, 996 S.W.2d 166, 170-71 (Tenn. 1999).

jury, as the weight of circumstantial evidence is a matter for the jury to determine. State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985). Additionally, whether all other reasonable theories have been excluded by the evidence is also a question of fact for the jury. Pruitt v. State, 460 S.W.2d 385, 390-91 (Tenn. Crim. App. 1970). Based on the record before this Court, we conclude the jury had ample evidence presented to it from which it could properly find that the Defendant was one of the two men involved in the robbery at issue in this case. Accordingly, we conclude the evidence is sufficient to support the conviction for aggravated robbery. This issue is without merit.

## IV. Excessive Sentence

In the Defendant's final issue on appeal, he claims the trial court erred in sentencing him to the maximum sentence available for his range (twelve years) based "solely" on his prior criminal record. To support this assertion, the Defendant, in a scant three-sentence "argument," states that his sentence was enhanced "based solely upon his previous history of criminal convictions . . . . This enhancement factor was not submitted to the jury or admitted by the Defendant. Therefore, Blakely [v. Washington, 542 U.S. 296 (2004)] precludes the application of such factors." We find the Defendant's sentence was properly enhanced and that Blakely v. Washington has no bearing on the Defendant's sentence.

In this case the Defendant was found to be a Range I, standard offender, and as such he was subject to a range of eight to twelve years for his Class B felony aggravated robbery conviction. See Tenn. Code Ann. § 40-35-112 (a)(2). The presumptive sentence was the minimum in this range. See id. § 40-35-210(c) (2003).[11] The record reflects that the trial court increased the Defendant's sentence from the presumptive eight years to twelve years based entirely on the Defendant's extensive prior criminal history. See Tenn. Code Ann. § 40-35-114(2) (2003). The record further reveals that the Defendant had several prior felony convictions, including burglary, robbery and multiple counts of larceny, as well as other misdemeanor convictions for offenses ranging from multiple traffic offenses, misdemeanor theft, DUI, and criminal trespass. The Defendant also admitted to illegal drug use and violated probation on at least one occasion.[12] This court has consistently held that enhancement, even to the maximum within the range, is allowed based solely on a finding of a previous criminal history. See, e.g., State v. Tyler Stout Smith, No. M2004-03048-CCA-R3-CD, 2006 WL 359675 (Tenn. Crim. App., Nashville, Feb. 16, 2006); State v. Terry Webb, No. W2003-03046-CCA-R3-CD, 2004 WL 2848379 (Tenn. Crim. App., Jackson, Dec. 10, 2004); State v. Ronald B. Finch, No. M2002-01050-CCA-R3-CD, 2003 WL 21997743 (Tenn. Crim. App.,

---

[11]We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

[12]While we deem it unnecessary in this case, we note that our de novo review of sentencing issues raised on appeal would allow us to find additional enhancement factors applicable in the Defendant's case which were not applied by the trial court. For example, it appears factor nine, that the Defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community" would apply in the Defendant's case. See Tenn. Code Ann. § 40-35-114(9) (2003).

Nashville, Aug. 22, 2003).  Accordingly, the trial court did not err in sentencing the Defendant to twelve years.

The Defendant also claims that his Sixth Amendment right to a trial by jury was impugned when the trial court made determinations of fact for sentence enhancement purposes that were not submitted to a jury, citing Blakely v. Washington, 542 U.S. 296 (2004).   However, our supreme court has recently held that the enhancement component of Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a trial by jury. See State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005).  Our supreme court held that Tennessee's sentencing structure "merely requires judges to consider enhancement factors," and unlike the sentencing guidelines struck down in Blakely, "does not mandate an increased sentence upon a judge's finding of an enhancement factor."  Gomez, 163 S.W.3d at 660.   Therefore, the Defendant's claim that the trial court erred in enhancing his sentence based on a factor not submitted to the jury fails.  This issue is without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgment of the trial court, as to both conviction and sentence, is affirmed.

_____
DAVID H. WELLES, JUDGE